### FARM AND HOME SAVING AND LOAN ASSOCIATION v. DAN L. MARTIN.

No. 6925. Decided December 4, 1935.
Rehearing overruled January 15, 1936.
(88 S. W., 2d Series, 459.)

*Donald & Donald,* of Bowie, *Thos. B. Greenwood, Dan Moody,* and *J. B. Robertson,* all of Austin, for plaintiff in error.

The Court of Civil Appeals erred in holding that the payment of 97 monthly installments of $43.50 each by Martin entitled him to a release of the lien on his lots, because the laws of Missouri, where the association was incorporated, and the by-laws of the association entered into and became a part of the contract made with a borrowing stockholder and such laws and by-laws unequivocally provided that subscribers to the capital stock of the association must continue to pay dues on their subscriptions until the stock is actually fully paid. Rue v. Missouri Pac. Ry. Co., 74 Texas, 475, 8 S. W., 533; Royal Arcunum v. Green, 237 U. S., 531; Wallace v. Motor Products,

15 Fed. (2d) 211; Warner v. Delbridge & Cameron Co., 110 Mich., 594, 68 N. W., 285; Fowler v. Bell, 90 Texas, 150, 37 S. W., 1058; Fidelity Association v. Thompson, 45 S. W. (2d) 167.

*Benson & Benson,* of Bowie, *Phillips, Trammel, Chizum, Estes & Edwards,* and *Clayton L. Orn,* of Fort Worth, for defendant in error.

Because the contract in question was executed in Texas and related to Texas real estate, the controversy should be determined by Texas law and not by the laws of Missouri. National Mutual B. & L. Ass'n. v. Brahan, 193 U. S., 635, 24 Sup. Ct. Rep., 532; New York Life Ins. Co. v. Cravens, 178 U. S., 389, 20 Sup. Ct. Rep., 962; Bernard Gloechler Co. v. Baker Co., 52 S. W. (2d) 912; Cantu v. Bennett, 39 Texas, 304.

It was error for the Court of Civil Appeals to hold that the association was not bound by its obligation contained in the deed of trust wherein Martin would never be required to pay a greater sum of money for any purposes or under any circumstances than the repayment of the $3,000.00 note plus the interest of 7.8 per cent. Eastern B. & L. Ass'n. v. Ebaugh, 185 U. S., 114, 22 Sup. Ct. Rep., 566; Prudential Bldg. & Loan Ass'n. v. Shaw, 26 S. W. (2d) 168; 4 R. C. L., 464, sec. 22; 9 C. J., 986, sec. 127.

MR. JUSTICE CRITZ delivered the opinion of the court.

This suit was filed in the District Court of Montague County, Texas, by Dan L. Martin against Farm and Home Savings and Loan Association, a private corporation, organized and chartered under the laws of Missouri, with a permit to do business in this State. By petition in the district court Martin sought to have declared paid a certain $3,000.00 non-negotiable note or contract executed by him and his wife to the Association. Also, Martin sought judgment removing the alleged cloud cast upon his title to certain real property by a certain deed of trust executed by himself and wife for the benefit of this Association. Trial in the district court resulted in a take nothing judgment in favor of the Association. On appeal by Martin to the Court of Civil Appeals at Fort Worth, that court reversed the judgment of the district court, and rendered judgment for Martin canceling the note and deed of trust, and removing the alleged cloud from his title. 81 S. W. (2d) 779. The Association brings error.

The instruments involved in the decision of this case consist of the following:

1. Materialman's lien note for $3,000.00, dated August 15, 1925, due on or before October 15, 1925, bearing ten per cent interest from maturity, payable to the order of Waples-Painter Company, and executed by Dan L. Martin and his wife.

2. Mechanic's lien contract, dated August 15, 1925, covering Lots 9 and 10, in Block 1, Leming Addition to the City of Bowie, Montague County, Texas. This instrument was given to secure the above note, and it and the note were for labor and material to be furnished by Waples-Painter Company in building on the above-described lots. The improvements were to be erected for the purpose of enabling Martin and his wife to use such premises as a residence homestead, and they own no other property.

3. Application for stock, signed by Dan L. Martin, directed to this Association, and dated July 17, 1925.

4. Application for loan, signed by Dan L. Martin, directed to this Association, and dated July 17, 1925.

5. Note for $3,000.00 executed by Dan L. Martin and his wife, payable to this Association, and dated September 19, 1925.

6. Deed of trust executed by Dan L. Martin and wife to Lee B. Ewing, Trustee for this Association, dated September 19, 1925, and covering the above-described lots and improvements. This deed of trust secures this $3,000.00 debt with interest.

7. Stock certificate issued by this Association for $3,000.00 of its stock, issued to Dan L. Martin, and dated September 19, 1925. This certificate was not delivered to Martin, but was retained by the Association to secure Martin's loan and stock subscription.

8. Receipt for $3,000.00, executed by Dan L. Martin and wife to this association, and dated September 19, 1925.

We assume that the above note and mechanic's lien contract by Martin and wife to Waples-Painter Company created a valid and subsisting mechanic's lien on the above-described lots and improvements. We also assume that this association furnished the money to take up and extend such note and lien, and that this Association was subrogated to all the equities and liens held by the original holder of the Waples-Painter instruments.

We now come to describe in detail the pertinent portions of the instruments referred to above under 3, 4, 5, 6, 7, and 8. These instruments are rather long, and it will require a rather extended statement to detail their pertinent contents.

The application for stock mentioned under 3, supra, signed by Martin and directed to this Association, reads as follows:

"Application For Stock In
"Farm and Home Savings and Loan Association of Missouri, Nevada, Missouri.

"July 17, 1925.

"I, Dan L. Martin, of Bowie, County of Montague, State of Texas, hereby subscribe for 30 shares of Class 'D' stock in the above named Association, subject to its By-Laws, Rules and Regulations, to which I hereby assent; I understand that agents have no authority to alter or amend the By-Laws, Rules and Regulations of the Association; and that the Association is not bound by any oral agreement or promises made by anyone other than covered by the By-Laws, Rules, Regulations and Contracts issued by the Association.

"I understand that if I cash out my stock before maturity one dollar of each one hundred dollars maturity value of the stock will be deducted.

"Two months advance dues $87.00. Date Certificate—Sept. 20, 1925.

"Signed—Dan L. Martin,
"Address—Bowie, Texas.

"Agent—C. A. Pruden.

### "SPECIAL NOTICE

"A payment of two months' dues in advance on all Installment Stock subscribed for as an investment, must invariably be paid by the applicant to the agent at the time of subscribing. When received at the Home Office, a certificate of stock and pass book, with the payment of two months' dues paid the agent properly credited therein, will be forwarded to the member.

"Where a loan is desired, application must be made on the regular loan application blanks, provided for that purpose. Agents have no authority to promise loans, but will give any desired information in reference to same. Before a loan is considered promised, application must be sent to the Home Office for consideration by the Board of Directors. If they approve same, due notice will be given direct or through one of our agents to the applicant.

"Where stock is taken for the purpose of obtaining an immediate loan, and loan is declined by the Board of Directors

for any cause, the advance payment of two months' dues will be refunded.

"(Subject to new form.)"

The application for loan mentioned under 4, supra, signed by Martin and directed to this Association, states that Martin desires to obtain a loan from the Association for $3,000.00, to be secured by a first lien on the property above described; that the property is a homestead; that Martin is married; that the monthly dues on stock in the Association will be $24.00, and the monthly interest payment $19.50; that such monthly payments will continue for 97 months, payable monthly in advance, beginning on the date of the deed of trust; that "The undersigned agrees to comply with the Rules and By-Laws of the Association now in existence or that may hereafter be enacted;" that applicant agrees to pay a membership fee of one per cent, and a loan expense fee for one-half of one per cent of the amount borrowed, and that applicant will carry insurance for the benefit of the Association. This application contains many other provisions, but we think we have stated those germane here.

The $3,000.00 note to the Association, mentioned under 5, supra, is in words and figures as follows:

"$3000.00          Bowie, Texas          September 19, 1925.

"FOR VALUE RECEIVED we, or either of us promise to pay to the FARM AND HOME SAVINGS AND LOAN ASSOCIATION OF MISSOURI, the following sums of money, viz: The sum of Twenty-four Dollars, the same being the monthly dues on the thirty shares of the capital stock of said Association, represented and evidenced by the certificate thereof numbered 86372 this day pledged by us—to said Association to secure a loan of Three Thousand—Dollars; and the sum of Nineteen and 50/100—Dollars; the same being the interest due monthly upon said sum so borrowed by us.

"And we promise to pay said Association at its Home Office at Nevada, Missouri, all of said sums of money, amounting in the aggregate to Forty-three and 50/100—Dollars, on the 20th day of each and every month, and continue such monthly payments for a term of ninety-seven months from date hereof; each and every payment herein provided for shall be made at the office of said Association in Nevada, Missouri.

"And we further agree in case of default in the payment of said sums of money, or any part thereof, monthly as aforesaid,

to pay all fines and penalties assessed on account thereof, in accordance with the rules, regulations and By-Laws of said Association, and if, in case of default, the stock pledged and the security given to secure said monthly payments shall, upon the sale thereof, be insufficient to repay said Association any balance which may be due and owing on said loan, we promise and agree to fully pay and discharge same; if we shall fail for a period of six successive months to pay dues, interest, or other charges required by the By-Laws, or shall become indebted to the Association in a sum equal to the gross amount of the dues, and interest for a period of six months, then the whole of this obligation shall become due and payable and may be collected by law. The payment of said monthly sum aggregating Forty-three and 50/100—Dollars each and every consecutive month hereafter until the maturity of said stock and the payment of all fines, penalties, advances, liens and other charges shall entitle all of said certificate of stock to redemption by said Association at the par value thereof, and the said shares of stock evidenced by certificate Number 86372 so taken and redeemed shall be taken by said Association in full satisfaction of this obligation and deed of trust or mortgage to secure the same; if this note is sued upon or placed in the hands of an attorney for collection we agree to pay attorney's fees in a sum equal to Ten per cent of the amount owing.

"This obligation may be paid off at any time upon giving thirty days' written notice to the Home Office of the Association at Nevada, Missouri, in which event this note or obligation may be credited on such payment of loan with the withdrawal value of stock carried with same.

"DAN L. MARTIN,
"ADA B. MARTIN."

The deed of trust to Lee B. Ewing, Trustee, to secure the $3,000.00 note just above quoted, is a very lengthy instrument, comprising some five and a half pages, single spaced, in the transcript. In the interest of brevity we will detail in part and quote in part the pertinent portions of this instrument. It conveys in trust the above-described property to secure the $3,000.00 note just above quoted, and it recites that it is executed in renewal and extension of the Waples-Painter note mentioned under 1, supra. The above deed of trust then contains the following provision:

"One note for the sum of Three Thousand—Dollars, One note for the sum of Fifteen—Dollars, due in Thirteen (13)

months, and one note for the sum of Fifteen—Dollars, due in Twenty-Five months; and to further secure the prompt and full re-payment of any and all sums which said Association, its successors, or assigns, may pay or advance for taxes, insurance, or for maintaining the property above described in proper repair; and free of liens, according to the sitpulations hereinafter set forth, and to further secure the prompt and strict performance of these and all other covenants and stipulations of this deed, and of all obligations incumbent on said—Dan L. Martin and his wife, Ada B. Martin—, as a shareholder in, and as a borrower from said Farm and Home Savings and Loan Association of Missouri, under its Charter-By-Laws, Rules and Regulations now existing, or which may hereafter lawfully be made, altered or amended:"

The deed of trust also contains the following provisions:

"1. That each and every payment herein mentioned, or which may become due by virtue of the obligations herein described, or under any of the terms, conditions and stipulations of this conveyance, shall be payable, without dimunition, at the office of said Association, at the City of Nevada, in the State of Missouri.

"2. That the obligation hereby secured, and this conveyance, and all the terms and conditions of each, are made and executed, and shall be in every instance construed as under, and in accordance with the laws of the State of Missouri, and the Articles of Incorporation, By-Laws, Rules, and Regulations of said Association, as the same now exists, or as the same may be hereafter lawfully changed, varied, or amended, and anything in the laws of any other state to the contrary notwithstanding; it being specifically understood and intended by the parties hereto that all the transactions between them with reference to this conveyance, and the loan and advances hereby secured, and the stock and certificates hereby pledged have been made and had under and in accordance with the laws of the State of Missouri.

"It is also agreed that should default be made in the payment of any of the items mentioned in this conveyance, or in the obligations secured hereby on the day when the same are due and payable according to the terms thereof, and according to the By-Laws of said Association, its Rules and Regulations, and should such default continue, in whole or in part, and so remain unpaid for a period of Six Months from due dates, then the said Association, its successors and assigns shall have and is hereby given the option to, without notice declare mature, due

and immediately payable the above described principal obligation, together with all arrearages, advances and penalties, althought the period herein, and the By-Laws, Rules and Regulations of said Association provided for payment of said obligation shall not have then expired; and in event of proceedings foreclosing this deed of trust, through legal proceedings or otherwise, the indebtedness hereby secured shall bear interest from date of default at the rate of 7.8 per cent per annum in lieu of further monthly installments, and the shares of stock above referred to shall be canceled and the surrender value thereof, as provided in the By-Laws of said Association, as of the date of the first default, shall be applied in reduction of the sums due on this Deed of Trust."

The deed of trust then provides, in case of sale thereunder, how the proceeds shall be applied, and particularly provides that they shall be applied "according to the terms of this conveyance and the obligation above described and hereby secured, and according to the By-Laws, Rules and Regulations of the Association." It then provides for the appointment of a substitute trustee and other matters not germane here. This deed of trust then contains the following provision:

"And it is further understood and declared to be the intent of the parties hereto that the grantors are bona fide stockholders in said Association, and have subscribed for said stock, and make payments thereon as an investment or method of saving, and in no sense or particular are the said stock payments to be considered as made on the loan or advances made by said Association; and it is mutually agreed that it is not the intention of the parties hereto to provide for the payment of interest in excess of ten per cent per annum on the principal sum advanced by said Association, and from time to time remaining unpaid and accruing. It is agreed that aside from attorney's fees, trustee's fees and reimbursements for any moneys that may be paid by said Association under this contract, by way of advancements for taxes, insurance, levies or assessments with interest thereon as herein provided; under no circumstances whatsoever shall the said obligors herein be required to pay said Association a greater sum of money, whether interest, premiums, fines, penalties, or under any other name, than the aggregate of the principal sum so advanced by said Association, together with interest thereon from the date hereof until paid, at the rate of 7.8 per cent per annum, etc., as above excepted that may be elsewhere herein provided for is under-

stood to be an error in calculation, and if collected, shall be returned to the said grantors."

The above deed of trust contains many other provisions, which we have not mentioned or quoted. We think we have stated and quoted those necessary and proper to a decision of this case.

The stock certificate issued by this association to Dan L. Martin, but retained in possession, mentioned under 7, supra, reads as follows:

"Incorporated Under The Laws of the State of Missouri.

"FARM AND HOME SAVINGS AND LOAN ASSOCIATION OF MISSOURI,

"Nevada, Missouri.

"No. 86372                                                $3000.00

"Authorized Capital $150,000,000.

"THIS CERTIFIES, That Dan L. Martin of Bowie County of Montague, State of Texas, is the owner and registered holder of 30 shares of the par value of One Hundred Dollars each of the capital stock of the FARM AND HOME SAVINGS AND LOAN ASSOCIATION OF MISSOURI, Nevada, Missouri.

"This Certificate is issued by the Association and accepted by the shareholder, subject to each and all of the following express terms and conditions:

"1st. The holder hereof agrees to pay to the Association at its Home Office in Nevade, Missouri, without notice, Twenty-four and no/100 Dollars, on or before the 20th day of each month, for 97 consecutive months from and after the date of this Certificate, and no further payments will be required; if all payments have been made, as herein provided, then at the expiration of 97 months from the date of this Certificate, or as soon thereafter as the earnings, together with the amount paid in, are equal to the face of this Certificate, the holder will be paid its par value, or at the expiration of 97 months from the date of this Certificate the holder may at his option demand and receive the book value in full settlement, or let the earnings accumulate to the par value of the stock.

"2nd. This stock, if not pledged for a loan, may be withdrawn at any time upon giving thirty days' written notice to the Home Office. If withdrawn before maturity of stock, the holder shall receive the amount paid thereon less One Dollar on each One Hundred Dollars of the full maturity value of this stock, and dividends out of the net earnings at the rate of

not less than five per cent per annum shall be allowed for the average time run.

"3rd. If the holder hereof fails to pay any monthly installment when due, he shall pay to the Association a fine of one per cent per month on the monthly dues payment for each month delinquent, and should six such delinquencies remain due and unpaid, then this Certificate shall be deemed subject to cancellation, and the Association shall settle with the stockholder as provided in the By-Laws of the Association.

"4th. This stock may be sold or transferred at any time upon the payment of a fee of One Dollar. No transfer is valid unless made on the books of the Association, and so attested on this Certificate.

"5th. The contract between the Association and its members is stated in this Certificate of Stock, and agents have no authority to alter or amend such contract in any particular, or to bind the Association by any promise or statements not in accordance with the same.

"IN WITNESS WHEREOF, the FARM AND HOME SAVINGS AND LOAN ASSOCIATION OF MISSOURI has caused this Certificate to be signed by its President, attested by its Ass't. Secretary, and its corporate seal affixed hereto, at Nevada, Missouri, this 19th day of September, 1925.

"O. H. Hoss, President.
"A. W. Forney, Ass't. Secretary.

"AGREEMENT NO. 1.

"FOR VALUE RECEIVED, I hereby transfer, assign and set over all my right, title and interest in law or equity to the within stock, to FARM AND HOME SAVINGS AND LOAN ASSOCIATION OF MISSOURI, of Nevada, Missouri.

"(Signed) DAN L. MARTIN.
"(Signed) ADA B. MARTIN.

"Witness
"J. M. McDONALD.

"As the purchaser of the within stock, I hereby agree to comply with all the terms and requirements of same.

"(Signed)_____

"This Certificate must be sent to the Home Office of the Association for approval and transfer on the books of the Association.

"Nevada, Mo.,_____
"The above assignment is recorded on the books of the Association and approved the above named date.

_____
"Secretary."

The receipt signed by Dan L. Martin and his wife, mentioned under 8, supra, reads as follows:

"Nevada, Mo., September 19, 1925.
"I hereby acknowledge receipt in full of FARM AND HOME SAVINGS AND LOAN ASSOCIATION OF MISSOURI, of Three Thousand Dollars, being the amount of money borrowed from said Association, less deductions authorized by me, to which I hereby assent.

"This loan is evidenced by my Certificate of Stock, No. 86372.

"I further certify that I have not paid directly or indirectly, any commission or emolument to any officer, agent, employee, or anyone connected with the said Association, other than the one-half of one per cent of loan mentioned and embodied in deduction statement signed by me.

"(Signed)   DAN L. MARTIN,
"ADA B. MARTIN."

It will be noted that the deed of trust and other instruments above mentioned and quoted from refer to the laws of Missouri and the articles of incorporation, by-laws, rules, and regulations of this Association. Also, such deed of trust particularly states, "the loan and advances hereby secured, and the stock certificate hereby pledged, have been made and had under and in accordance with the laws of Missouri." It is thus evident that the articles of incorporation of this association, and its by-laws, rules, and regulations, and the laws of Missouri, form a part of this contract, so long as they do not transgress our laws. It is, therefore, necessary that we here quote certain of the by-laws of this Assocaton and certain applicable laws of Missouri in force at the time this contract was made.

The following are the pertinent by-laws:

"The terms and conditions set forth in the application for stock and certificates of stock, together with the by-laws of the Association, laws of the State of Missouri, and all contracts made in accordance therewith, shall constitute the contract between the Association and its members, and no other

terms or conditions or stipulations shall be recognized as binding on the Association."

"Every shareholder of stipulated monthly payment installment stock shall pay to the Association, without notice, a monthly dues installment of 50 cents, 60 cents, 80 cents, and $1.30 on each $100.00 of stock, according to the class of stock carried by him, the Association issuing four classes of monthly installment stock, classes H, F, D and B, which are estimated to mature in 136, 120, 97 and 65 months, respectively, with monthly payments as above stated."

"Whenever any unpledged share, of any member of this Association shall reach its par value, all payments thereon shall cease, and the holder thereof shall be entitled to receive, and shall be paid out of the funds of the Association, the maturing value thereof * * *"

"Any shareholder not in arrears on his stock, shall be entitled to a loan equal to the par value of the stock, if sufficient security be offered to the Association, in accordance with the Rules and By-Laws of the Association. The Association hereby dispenses with the offering of its money to members by bids, and in lieu thereof, will loan or advance its money to members who desire to borrow money upon the following terms: Every borrower, in addition to the payment of the monthly dues on stock carried with loan shall pay monthly the sum of 65 cents on each $100.00 borrowed, as interest, each and every month during the entire period the loan runs."

"* * * In event of proceedings to foreclose any deed of trust or mortgage taken by this Association, the indebtedness thereby secured shall bear interest from date of default at the rate of 7.8 per cent per annum in lieu of further monthly installments, and the shares of stock above referred to shall be canceled and the surrender value thereof, as provided in these By-Laws as of date of the first default, shall be applied in reduction of the sum or sums due under any such deed of trust or mortgage sought to be foreclosed."

"REPAYMENT OF LOANS—Loans may be repaid at any time by giving thirty days' written notice to Home Office, the borrower paying in cash the amount of the difference between the amount loaned, together with all charges due, and the withdrawal value of the stock pledged at the date the loan is repaid. The stock may be redeemed and retained by paying the amount of the loan in full, together with all charges against it. The Association will accept at any time a payment of $100.00 on the principal of said loan, or any multiple of $100.00

and the monthly payment on said loan will thereby be reduced as follows: On interest at the rate of 65 cents per month on each $100.00 repaid."

"The Board of Directors may declare annual or semi-annual or monthly dividends from the net earnings of the Association and set same aside as follows:

'Earnng Reserved for Maturities'

and all surplus earned after setting aside said necessary Reserve for Maturities over and above the cost of operation, shall be set aside and constitute a Contingent Fund Surplus to meet unascertained losses."

"All remittances must be made payable to the Farm and Home Savings and Loan Association of Missouri, and must be sent to the Home Office of the Association at Nevada, Mo., and should reach there not later than the twentieth day of each month."

The statutes of Missouri pertinent here read as follows:

"* * * Such certificate (of stock) shall be deemed in all courts of justice to be a contract between the corporation and the shareholder, and shall determine at all times the liability of the corporation to the holders of its shares. It shall be subject to a lien in favor of the corporation for the payment of unpaid installments, fines and other charges incurred thereon, under the provisions of the charter and by-laws. The by-laws may prescribe the form and manner of enforcing such lien. New shares may be issued in lieu of any shares withdrawn, redeemed, canceled or forfeited. Said capital, as accumulated, shall from time to time be loaned or advanced to members of the corporation, who shall give security for the prompt and continued payments of all dues, interest, premium and fines until each of the shares so advanced upon shall reach the ultimate and full value thereof. * * *"

"Stock transferred to secure loan. For every loan or advance made as aforesaid, a non-negotiable note or a bond secured by first mortgage or deed of trust on real estate shall be given, accompanied by a transfer and pledge of the shares of stock of the member or members so obtaining a loan or advance. Said shares so transferred and pledged shall be held by corporation as additional or collateral security for the performance of the agreements, covenants and conditions of said note or bond and mortgage or deed of trust. Said note or bond and mortgage or deed of trust shall recite and set forth the number of shares transferred and pledged by the particu-

lar shareholder so borrowing, and the amount of money advanced thereon, and shall be expressed to be conditioned for the payment at the stated meetings, or at such other times as may be agreed upon, to the corporation of the dues on the number of shares so pledged and advanced upon, and the interest, or interest and premium upon the loan or advance for which said shares are pledged, and said note or bond and mortgage or deed of trust given, together with all fines chargeable upon arrears of such payment, shall remain in full force and effect until said shares shall reach the ultimate value thereof, and until all payments of dues, interest and fines and all other liens due to such association on account of such shares and loans shall have been fully paid, or said loan shall be otherwise sooner canceled and discharged. * * *

"Mortgage—when foreclosed. In case any borrowing shareholder shall for the period of six successive months fail to pay the dues, interest, fines and other charges required of him by the by-laws, or shall become indebted to such association in a sum equal to the gross amount of the dues, interest, fines and other charges for the period of six months, the Association may proceed, according to law, to foreclose the mortgage or deed of trust given by such borrower as security for the loan, in which event the defaulting borrower, in addition to the amount loaned, as shown by the bond and mortgage or deed of trust given by such borrower, shall be charged with all dues, interest, premiums and fines, and other sums due and in arrears, and shall have and be given credit for the withdrawal value of the shares pledged and transferred by him as aforesaid, in accordance with the rule hereinafter provided for the withdrawal and cancellation of shares. * * *"

"Loans—when and how canceled. A shareholder may repay a loan at any time upon application to said corporation, upon such terms and conditions as may be prescribed in the By-Laws of the Association; if there be no such By-Laws, then, on settlement of his account, such borrower shall be charged with the full amount of the loan as originally made to him, together with all installments of dues, interest, premium and fines, moneys advanced for taxes, insurance, lien claims, and other sums of money, then remaining due and unpaid, and shall receive and be given credit if he desires to surrender his shares, for the withdrawal value of the shares pledged and transferred by him as security for said loan, in accordance with the rule hereinafter provided for the withdrawal and cancellation of shares; and where the full amount of the

agreed premium bid has been deducted at the time of making the loan or advance, then the borrower shall also be credited with one one-hundred and twentieth part of the amount of the gross premium bid for every month that the series in which the loan was made lacks of being one hundred and twenty months old; * * * and provided further, that a shareholder desiring to retain his shares and membership thereunder may, at his option, repay his loan, as above provided, without claiming credit for said shares as part payment of the amount of his debt, whereupon said shares shall be retransferred to him, and he shall assume and be entitled to all privileges of non-borrowing members, free, clear and discharged of and from any claim thereon by reason of said canceled loan or advance."

"Contingent fund created. Every building and loan association whether heretofore or hereafter organized, shall accumulate from its earnings a 'contingent fund,' for the payment of contingent losses, and at least three per cent of the net earnings made in its previous six months shall be set aside semi-annually in February and August of each year to such fund until it reaches at least five per cent of the total assets. All losses shall be paid out of such fund until the same is exhausted, and whenever the amount in said fund falls below five per cent of the assets as aforesaid, it shall be replenished by semi-annual appropriations of at least three per cent of the net earnings as hereinbefore provided until it again reaches such amount. Any sums heretofore transferred to the contingent fund of any such association shall constitute its 'contingent fund,' when this act takes effect. All losses shall be assessed in the same proportion and manner on all members after the amount in the 'contingent fund' has been applied to the payment of the same."

"Dues paid by shareholders. Each shareholder shall pay to said corporation at or before each stated meeting of the directors or at such time as may be provided in the by-laws as a contribution to the capital thereof the sum fixed as dues for each and every share held by him, until each share shall, under the provisions of this article, reach the ultimate value thereof; Provided, that no funds shall be taken from one series to mature any other series, or the by-laws of the association may authorize the board of directors to allow and pay interest at a rate not exceeding eight per cent per annum on such installments as are paid in advance. Whenever an unpledged share shall reach its maturity, all payments thereon

shall cease, and the holder thereof shall be entitled to receive and shall be paid out of the funds of the said corporation the maturing value thereof; * * * Borrowing shareholders, for each share borrowed upon, shall, in addition to the dues afore-said, pay the stated periodical payment of interest, and in associations in which the premium is paid by installments, the periodical payment of premium agreed upon until such shares shall reach the ultimate value thereof, when said shares and said loan shall be declared canceled and satisfied."

"Dividends declared, when. The board of directors of any association formed under the provisions of this article or any previous act may from time to time declare dividends from the earnings of the association, to be paid or credited in such manner as may be provided in the by-laws, but no dividend shall be declared except from the earnings of the association; and if the said board of directors shall declare, credit or pay any dividend when the company is insolvent, they shall be jointly and severally liable to the extent of the dividend so declared, credited or paid, for all the debts of the association then existing, or that shall be thereafter contracted while they shall respectively continue in office; provided, that any of the board of directors who shall object to the declaring of such dividend or the payment or crediting of the same, and who shall, at any time before the time fixed for the payment thereof, file a certificate of his objection, in writing, with the secretary of the company, and with the commissioner of finance, shall be exempt from such liability. But no director who shall be present at any meeting when such dividend is declared shall be exempt from such liability unless he shall then and there object to the declaration, credit or payment of such dividend and shall also procure his objection to be noted in the book of minutes of such association.

"Officers civilly liable and criminally guilty, when. Any officer, director, trustee, attorney, agent or servant of any association heretofore or hereafter to be incorporated who shall use or dispose of the moneys, property, assets or funds of such association, or assign, transfer, cancel, deliver up or acknowledge satisfaction of any bond, mortgage, or other written instrument belonging to such association, unless duly authorized, or otherwise than in the regular and legitimate business of the corporation, or who shall be guilty of specu-lating in the stock of the association * * * shall be liable civilly to the corporation, and also to any other party injured to the extent of the damage thereby caused; and shall also be

deemed guilty of a misdemeanor, or felony, and upon conviction, be punished in the manner prescribed by law for stealing property of the value of the money, property, assets or funds so used or disposed of or stealing property of the value of any bond, mortgage or other written instrument so assigned, transferred, canceled and delivered up."

We have quoted such by-laws and statutes as we deem necessary and proper for a decision of this case.

As we understand this record, Martin contends that under his contract and under the laws of Texas he was only obligated to pay to this Association the sum of $43.50 per month for 97 months, together with certain dues, etc. He has done this; and if his interpretation of the contract is correct, he is entitled to have the judgment of the Court of Civil Appeals affirmed.

The Association contends that the contract between it and Martin, properly interpreted, provides an ordinary building and loan contract, by the terms of which Martin became one of its borrowing members. It is then contended by the Association that under the terms of such contract it is Martin's duty to continue to pay his monthly obligations until his stock is actually worth the amount of his $3,000.00 debt, or until he shall pay the difference between the amount of the debt and the actual value of his stock. In this connection, it is conclusively shown that the actual value of Martin's stock was $514.31 less than the $3,000.00 debt. It is also shown that this Association became insolvent in a building and loan sense prior to the time that Martin made his 97th monthly payment, to such an extent as to make Martin's stock worth $514.31 less than its par value. It is also shown that all stock, borrowing and nonborrowing, in this association is worth less than par. in the same proportion, and that such fact has been duly adjudicated in a class suit filed for that purpose in a court of competent jurisdiction in the State of Missouri.

■ In order to decide this case it is first necessary to determine what constitutes the contract between the parties. After a careful investigation of this record we are convinced that all instruments above enumerated constitute the contract, just as completely and just as effectively as if they were all comprised within the four corners of one instrument.

When the several instruments are read together as one contract, it fully appears by its various provisions that it

makes the laws of Missouri and the Association's articles of incorporation, by-laws, rules, and regulations, as they then existed or as they should be thereafter lawfully changed, varied, or amended, a part of the contract. It thus appears that in order to ascertain the full terms of the contract we must not only look to the terms and conditions directly set forth therein, but we must also look to the laws of Missouri and the by-laws, etc., of the Association. Wirtz v. Sovereign Camp W. O. W., 114 Texas, 471, 483, 268 S. W., 438, and authorities there cited.

■ Since the laws of Missouri and the by-laws of this Association, etc., are a part of this contract, Martin was and is charged with notice thereof, and must be held to be bound thereby, where such laws, by-laws, etc., "are not in conflict with the Constitution of the United States or the laws of the state, or the charter of the Association, or are not against public policy. Witz v. Soverign Camp W. O. W., supra. When we read this entire contract, considering the laws of Missouri and the by-laws of the Association as parts thereof, it becomes plainly evident that Martin simply became a borrowing member of this concern. No issue of fraud is involved, because Martin made his contract with full legal notice before him that the laws of Missouri and the by-laws of the Association were parts of his contract. In this connection, this record shows that Martin was an educated man, because it shows that he was Superintendent of the Schools of Bowie, Texas.

When we come to examine the by-laws of this Association we find that they expressly provide that every shareholder of stipulated monthly payment installment stock shall pay to the Association monthly dues installments of 50c, 60c, 80c, and $1.30, respectively, on each $100.00 of stock, according to the class of stock carried by him. It is then shown that the stock is classified as H, F, D, and B, which are estimated to mature in 136, 120, 97, and 65 months, respectively. A reference to this contract shows that Martin subscribed to 30 shares of Class D stock. As shown by the by-laws, this stock required a monthly payment of 80c per share, and was merely estimated to mature in 97 months. But according to the by-laws this was a mere estimate, and not a guarantee. It is, therefore, evident that the provision for 97 monthly payments as set out in the note and deed of trust was, and is, merely an estimate. Martin had notice of this, because he was legally apprised of that fact by the by-laws of the Associaton. Further-

more, he was legally apprised of the fact that under the laws of Missouri and the by-laws of the Association, this Association could not guarantee the dividends on its stock. Also, he legally knew that he was becoming a member of an incorporated mutual association. Finally, we think under the laws of Texas this Association could not guarantee the maturity value of its stock, as we will later demonstrate.

■ We will not extend this opinion by attempting to discuss in detail all the provisions of this contract, including as parts thereof the laws of Missouri and the by-laws; but we think that when it is considered in its entirety it becomes plainly evident that Martin simply became a borrowing member of this Association, and that he entered into such relationship with full legal notice of the obligations he was assuming, as defined by the very instruments he signed, and the things they referred to and made parts thereof. Simply stated, by the terms of this contract Martin borrowed $3,000.00 from this Association, and agreed to pay as interest thereon the sum of $19.50 per month. At the same time he subscribed for $3,000.00 of the capital stock of this Association, represented by 30 shares. He agreed to pay monthly on this stock the sum of $24.00. It was understood by the contract, considered as a whole, that when the stock became of equal value to the $3,000.00 debt, the one would cancel the other, and the lien would be satisfied. It is true that the instrument termed the note states that Martin was to make 97 monthly payments of $43.50 each, being $24.00 on stock dues and $19.50 as monthly interest on the $3,000.00 borrowed. Also, it is true that the stock certificate states that 97 monthly payments shall be made thereon, and no further payments shall be required. At the same time, the by-laws of the association inform Martin that the statement that 97 payments only would be required was an estimate; and, further, the by-laws of the Association and the laws of Missouri informed Martin that the Association, a mutual concern, did not, and could not, bind itself to mature its stock prior to actual maturity thereof. In this connection, it is certainly evident that this debt has not been paid, unless it can be said that this stock should be valued at $3,000.00 under this contract. This not only cannot be said from the contract, but the opposite is true.

The Court of Civil Appeals holds that under Article 874, R. C. S., foreign building and loan associations doing business in this State are required to conduct their business in accord-

ance with the laws of this State governing domestic building and loan associations. The Court of Civil Appeals then holds that under the provisions of Article 857, R. C. S., this Association "had a right to limit the number of payments the borrowing stockholder would be required to make to pay off his loan and secure a release of his encumbrance."

A reading of Article 874, supra, shows that it provides, in substance, that foreign building and loan associations doing business in Texas shall conduct the same in accordance with our laws "governing domestic building and loan associations, and shall comply with all requirements of said laws except as herein provided."

Article 857, supra, provides, among other things:

"* * * Subject to the approval of the Commissioner, the number of payment (payments) of dues, interest and premium required from the borrowing stockholder to pay off his loan and secure a release of his incumbrance may be limited to such a definite number as the by-laws may provide. * * *"

Now, conceding that the provisions of Article 874 make the above-quoted portion of Article 857 applicable to foreign corporations doing business in Texas, still Article 857 can give no comfort to Martin under the facts contained in this record. In this regard it will be noted that Article 857 only authorizes building and loan associations to limit the number of payments of dues, interest, and premium required from borrowing stockholders when such limitation is authorized by its by-laws and approved by the commissioner. If either one of these requirements is lacking, the power does not exist. A reading of the by-laws of this Association will demonstrate that they not only do not provide for such a contract, but expressly prohibit it. Also, there is nothing in this record to show that the commissioner has ever approved, as to this Association, the authority provided for in the above-quoted portion of Article 857. Finally, as shown by the statute, the commissioner only has power to approve such contracts where the by-laws of the Association provide for them.

As shown above, Article 857, supra, in effect authorizes building and loan associations to make contracts limiting the number of payments of dues, interest, and premiums required from borrowing stockholders, where such limitation is authorized by the by-laws of the Association and approved by the commissioner. We think this statute demonstrates a plain legislative intent to deny the right to make such contracts unless the statute is complied with. In other words, the

statute denies the right to make such contracts, unless they are authorized by the Association's by-laws and approved by the commissioner.

■ Counsel for Martin contend that this contract is null and void because in contravention of Section 50 of Article XVI of our State Constitution. In this connection, it is contended that this contract attempts to create a lien on Martin's homestead to secure stock subscription, penalties, etc. The above constitutional provision makes null and void all attempted liens on the homestead, except for purchase money therefor, and improvements made thereon. If this contract attempts to create a lien on Martin's homestead to secure his stock subscription, penalties, etc., it is, to that extent, null and void. Of course, a lien cannot be created on a homestead except for the purposes authorized by the Constitution. However, as we construe this contract, taken as a whole, it has the effect to extend and preserve a mechanic's lien on this property, Martin's homestead, to secure the $3,000.00 money borrowed, with interest. In this connection, Martin owed $3,000.00, bearing ten per cent. interest, secured by a valid and subsisting mechanic's lien on his homestead. This Association advanced the money to take up, pay off, and extend such indebtedness, and by the attending circumstances became subrogated to the original mechanic's lien to secure it for the money so advanced, with interest. This constituted Martin a borrower from the Association. At the same time, Martin assumed another relationship with the Association. He became a subscriber for 30 shares of Class D stock therein, for which he agreed to pay $24.00 per month. As a member of the Association, he agreed to pay certain other things. When the stock becomes of equal value to the debt, or when Martin pays the difference between the value of the stock and the debt, the one will cancel the other. The lien on the homestead is only for the money borrowed, with interest. It does not secure the stock subscription. The stock subscription, and money paid thereon, is in the nature of a separate savings account, by which a fund is created which will ultimately be applied to liquidate the debt in accordance with the details of the plan. Under the express words of the contract, the money paid on stock subscription is not as such a payment on the debt. In this connection, we take the liberty to requote the following provisions of the deed of trust:

"It is also agreed that should default be made in the

payment of any of the items mentioned in this conveyance, or in the obligations secured hereby on the day when the same are due and payable according to the terms thereof, and according to the By-Laws of said Association, its Rules and Regulations, and should such default continue, in whole or in part, and so remain unpaid for a period of Six Months from due dates, then the said Association, its successors and assigns shall have and is hereby given the option to, without notice declare mature, due and immediately payable the above described principal obligation, together with all arrearages, advances and penalties, although the period herein, and the By-Laws, Rules and regulation of said Association provided for payment of said obligation shall not have then expired; and in event of proceedings foreclosing this deed of trust, through legal proceedings or otherwise, the indebtedness hereby secured shall bear interest from date of default at the rate of 7.8 per cent per annum in lieu of further monthly installments, and the shares of stock above referred to shall be canceled and the surrender value thereof, as provided in the By-Laws of said Association, as of the date of the first default, shall be applied in reduction of the sums due on this Deed of Trust.

\* \* \* \* \* \* \*

"And it is further understood and declared to be the intent of the parties hereto that the grantors are bona fide stockholders in said Association, and have subscribed for said stock, and make payments thereon as an investment or method of saving, and in no sense or particular are the said stock payments to be considered as made on the loan or advances made by said Association, \* \* \* "

■ Counsel for Martin contend that Martin's contract with the Association is null and void because in contravention of Section 6 of Article XII of our State Constitution. That constitutional provision reads as follows:

"Sec. 6. No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

By this transaction Martin subscribed for 30 shares of Class D stock in this association, to be paid for in installments of $24.00 per month. The stock certificates never left the possession of the association, but was held by it as security therefor; and the stock could only be transferred on the books of the Association. We think this transaction, as applied to build-

ing and loan associations, has been recognized as valid by this Court too long for its validity to be now open for review. Many millions of dollars of such contracts have been negotiated and are now in existence. Prudential Building & Loan Assn. v. Shaw (Com. of Appls., opinion adopted), 119 Texas, 228, 26 S. W. (2d) 168, and authorities there cited.

The judgment of the Court of Appeals is reversed, and the judgment of the district court is affirmed.

Opinion delivered December 4, 1935.

Rehearing overruled January 15, 1936.