## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 15, 2019

Lyle W. Cayce
Clerk

No. 18-20336

SYLVIA ZEPEDA,

      Plaintiff - Appellee

v.

FEDERAL HOME LOAN MORTGAGE CORPORATION,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before HAYNES, GRAVES, and HO, Circuit Judges.

JAMES C. HO, Circuit Judge:

To protect homeowners, the Texas Constitution imposes a number of requirements before a lender may execute a deed of trust on a homestead to secure a loan. *See generally* TEX. CONST. art. XVI, § 50. At the same time, Texas courts have on various occasions allowed lenders to invoke the doctrine of equitable subrogation to obtain partial repayment of the loan, in the event that one of the requirements of the Texas Constitution is not met. *See, e.g.*, *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 662 (Tex. 1996). This case requires us to decide a dispute that falls at the intersection of these two competing principles of Texas law, under circumstances not directly addressed by a previous decision of the Texas Supreme Court, but that may recur in

No. 18-20336

future cases. We believe this dispute presents a pure question of law that "should be answered by the only court that can issue a precedential ruling that will benefit all future litigants, whether in state or federal court." *JCB, Inc. v. Horsburgh & Scott Co.*, 912 F.3d 238, 239 (5th Cir. 2018). Accordingly, we certify one question to the Supreme Court of Texas.

This case also presents a question of contractual subrogation which we do not certify to the Texas Supreme Court because, as we shall explain, Texas law already provides a clear answer. As the district court correctly concluded, a secondary lender is not entitled to contractual subrogation without a valid contract.

## I.

## A.

The Texas Constitution states that "[n]o . . . lien on the homestead shall ever be valid unless it secures a debt described by this section." TEX. CONST. art. XVI, § 50(c). Among other things, the homeowner and the lender must satisfy various procedural requirements to secure a loan that uses a homestead as collateral. TEX. CONST. art. XVI, § 50(a)(6)(Q). At issue here is the requirement that both "the owner of the homestead *and the lender* [must] sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made." TEX. CONST. art. XVI, § 50(a)(6)(Q)(ix) (emphasis added).

In the event the lender fails to comply, the borrower may notify the lender of the mistake. TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). If the lender does not correct the failure within sixty days, it may forfeit all principal and interest of the loan. *Id.* "[A] lien securing a constitutionally noncompliant home-equity loan is not valid before the defect is cured." *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 547 (Tex. 2016).

2

No. 18-20336

Even in the event of noncompliance, however, some lenders under certain circumstances may be able to recover on the loan under the doctrine of equitable subrogation. *LaSalle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 620 (Tex. 2007). Subrogation provides that a "subsequent lender will succeed to the rights of prior lenders and become entitled to 'all rights of the prior creditors in relation to the debt.'" *Vogel v. Veneman*, 276 F.3d 729, 735 (5th Cir. 2002) (quoting *Means v. United Fid. Life Ins. Co.*, 550 S.W.2d 302, 308 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.)).

Generally, subrogation works as follows: A homeowner takes out a loan using the homestead as collateral. Later, the homeowner takes out a second loan, and asks the second lender to pay the balance on the first loan. The second lender is subrogated to the first lender's rights under the original lien. Whatever the terms of the original loan agreement, at a minimum, the second lender stands in the shoes of the first lender. *See* RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 7.6 (AM. LAW INST. 1996). Without subrogation, the risk of forfeiture may discourage some lenders from refinancing homestead property. *LaSalle Bank*, 246 S.W.3d at 620.

## B.

In 2007, Sylvia Zepeda took out a purchase-money loan for $65,000 from CIT Group/Consumer Finance, Inc., to buy her homestead. Zepeda secured the loan using her homestead as collateral. Four years later, Zepeda took out a second loan from Embrace Home Loans, Inc., for $56,500 to refinance her current debt. Embrace and Zepeda executed an agreement for an extension of credit under § 50 of the Texas Constitution, secured by a lien on her homestead. The agreement required Embrace to pay the balance of Zepeda's first lien with CIT and release the remainder of the funds to her. The agreement contained an express subrogation provision, which provided that Embrace would be subrogated to all rights of any other holder of liens or debts

3

outstanding before the agreement was executed. Upon Embrace's payment of the balance of Zepeda's debt to CIT, CIT released its claim on the homestead.

In 2015, Zepeda notified Embrace that the loan documents contained a constitutional deficiency—namely, that Embrace's signature did not appear on the acknowledgement of fair market value. In response, Embrace did not sign the document, but instead sent a new copy of the acknowledgement to Zepeda, with no explanation for the lack of signature.

At some point after Zepeda originally notified Embrace of the deficiency, Freddie Mac became Embrace's successor-in-interest for Zepeda's loan. At oral argument, Freddie Mac admitted it received the notice to cure, but offered no reason why it did not attempt to cure the problem. Nor did Freddie Mac explain why Embrace failed to sign the document.

Zepeda sued Freddie Mac to quiet title, claiming that Freddie Mac's failure to comply with the Texas Constitution meant that Freddie Mac did not possess a valid lien on her property. In its defense, Freddie Mac asserted that it is both contractually and equitably subrogated to the original 2007 lien, because its predecessor-in-interest paid off the remainder of that loan. Both parties filed cross motions for summary judgment.

The district court granted summary judgment on Zepeda's quiet-title claim and denied Freddie Mac's claim for contractual and equitable subrogation. It found that Freddie Mac could not avail itself of contractual subrogation, because Freddie Mac did not have a valid contract. The district court also denied equitable subrogation, because it found that Freddie Mac was negligent and therefore could not claim an equitable remedy.

No. 18-20336

Freddie Mac appeals the denial of its claims for both contractual and equitable subrogation. Neither party disputes the validity of the 2007 loan or the invalidity of the 2011 loan.[1]

## II.

We review a grant of summary judgment de novo. *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 749 (5th Cir. 2018). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

## A.

Contractual subrogation arises from a *valid* deed of trust executed by both the borrower and lender. *Benchmark Bank*, 919 S.W.2d at 662. *See also* TEX. CONST. art. XVI, § 50(c) (no "trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section"). Freddie Mac failed to sign the acknowledgment of fair market value, as required under § 50(a)(6)(Q)(ix). Zepeda properly notified Freddie Mac of the failure to comply, and Freddie Mac neither cured the deficiency, nor explained why it failed to do so. Freddie Mac acknowledges that the loan document is invalid but argues that it is nevertheless contractually subrogated to the original lien terms. It acknowledges that it forfeits any amount of the loan beyond what was used to pay off the original lien. We disagree.

If contractual subrogation requires a valid deed of trust, which requires the loan to comply with constitutional provisions, and the loan does not comply, it follows that the deed of trust is invalid, and that precludes any contractual subrogation. Without a signature, Freddie Mac has no ability to enforce the

---

[1] Because Freddie Mac is Embrace's successor-in-interest and received notice of the deficiency, we shall refer to Freddie Mac instead of Embrace for the remainder of this opinion.

No. 18-20336

contract itself or its subrogation provision. Accordingly, we agree with the district court's denial of Freddie Mac's contractual subrogation claim.

B.

In contrast to Freddie Mac's contractual subrogation claim, equitable subrogation occurs when a subsequent lender pays off an existing debt, regardless of whether the subsequent loan was valid. *Vogel*, 276 F.3d at 735. "The doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor." *LaSalle Bank*, 246 S.W.3d at 619. Equitable subrogation benefits lenders, to be sure, but the doctrine benefits homeowners as well. "Without equitable subrogation, lenders would be hesitant to refinance homestead property due to increased risk that they might be forced to forfeit their liens." *Id.* at 620. "The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor" whose debt was repaid. *Bank of America v. Babu*, 340 S.W.3d 917, 926 (Tex. App.—Dallas 2011, no pet.).

Since at least 1890, the Supreme Court of Texas has applied equitable subrogation in the face of a constitutionally-invalid home-equity loan. *Texas Land & Loan Co. v. Blalock*, 13 S.W. 12, 13–14 (Tex. 1890). *See also, e.g.*, *LaSalle Bank*, 246 S.W.3d at 618 (applying equitable subrogation for a loan impermissibly secured on homestead property designated for agricultural use); *Benchmark Bank*, 919 S.W.2d at 662 (upholding equitable subrogation for a loan to pay taxes unconstitutionally secured by a lien on the homestead); *Farm & Home Sav. & Loan Ass'n v. Martin*, 88 S.W.2d 459, 469–70 (Tex. 1935) (upholding equitable subrogation for a valid mechanic's lien when the second loan was unconstitutional).

None of these cases, however, involve a constitutional defect that is exclusively the fault of the lender, as is the case here. If the party seeking

6

No. 18-20336

equitable subrogation could have satisfied the requirements of § 50(a)(6)(Q)(ix) but failed to do so, does that failure preclude it from invoking equitable subrogation? To our knowledge, the Supreme Court of Texas has never answered the question, and the parties cite no such decision.[2]

### III.

We hereby certify the following question of law to the Supreme Court of Texas:

> Is a lender entitled to equitable subrogation, where it failed to correct a curable constitutional defect in the loan documents under § 50 of the Texas Constitution?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.

**A True Copy**
**Certified Aug 15, 2019**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

---

[2] The only potential guidance comes from two appellate cases from Dallas, but no clear rule emerges from those rulings. In *Murray v. Cadle Co.*, 257 S.W.3d 291 (Tex. App.—Dallas 2008, pet. denied), the court found that the party seeking equitable subrogation was at fault and denied equitable subrogation accordingly. Three years later, that same court found that, although the bank was responsible for the non-compliant loan, it was still entitled to equitable subrogation. *Bank of America*, 340 S.W.3d at 928. We have been unable to discern a governing rule of Texas law from these decisions.

7