# IN THE SUPREME COURT OF TEXAS

No. 19-0842

PNC MORTGAGE, A DIVISION OF PNC BANK, N.A., SUCCESSOR
TO NATIONAL CITY BANK AND NATIONAL CITY MORTGAGE,
A DIVISION OF NATIONAL CITY BANK OF INDIANA, PETITIONERS,

v.

JOHN HOWARD AND AMY HOWARD, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

**PER CURIAM**

JUSTICE GUZMAN did not participate in the decision.

A refinancing lender failed to foreclose its property lien within the statutory limitations period after the borrowers defaulted. The borrowers had used the proceeds from the refinancing to discharge two existing liens. Equitable subrogation "allows a lender who discharges a valid lien on the property of another to step into the prior lienholder's shoes and assume that lienholder's security interest in the property, even though the lender cannot foreclose on its own lien." *Fed. Home Loan Mortg. Corp. v. Zepeda*, 601 S.W.3d 763, 766 (Tex. 2020). Without the benefit of our decision in *Zepeda*, the court of appeals concluded that the refinancing lender's failure to timely foreclose its lien precluded the lender from seeking recourse through equitable subrogation.

___ S.W.3d ___. Because a lender's forfeit of its lien does not preclude the lender's equitable right to assert a pre-existing lien discharged with the proceeds from its loan, we reverse and remand.

Respondents John and Amy Howard purchased a home in 2003 with two purchase-money mortgages. Two years later, the Howards refinanced these mortgages with the Bank of Indiana,[1] executing a note and deed of trust on the property in the bank's favor. Using nearly all the proceeds from the Bank of Indiana loan, the Howards paid off the two existing mortgages on their property. The Bank of Indiana later assigned the note and deed of trust to Petitioner National City Mortgage Company, a subsidiary of National City Bank. National City Bank later merged with Petitioner PNC Mortgage.[2]

In 2008, the Howards stopped making payments on the note. In January 2009, National City Bank notified the Howards of their default and of its intent to accelerate the loan if the Howards did not cure it. Five months later, National City Bank sent the Howards notices of acceleration.

Meanwhile, the Bank of Indiana initiated foreclosure proceedings, despite its previous assignment of the note to National City Bank. The Howards challenged this foreclosure on the basis that the Bank of Indiana no longer held the mortgage on the property. The Howards also added PNC as a defendant. The Howards' challenge was successful. The trial court declared the Bank of Indiana foreclosure void, leaving the Howards' claims against PNC pending.

---

[1] National City Mortgage, a Division of National City Bank of Indiana.

[2] PNC Mortgage, a Division of PNC Bank, N.A.

PNC then counterclaimed against the Howards, seeking foreclosure of its lien.[3] But concerned by this time that the limitations period for foreclosure on its deed of trust had passed,[4] PNC alternatively sought a judgment declaring its right to foreclosure of the underlying liens on the property through equitable subrogation. It alleged that the Howards had discharged those earlier liens with the proceeds from the note PNC held. PNC also separately sued the Howards, alleging breach of the loan agreement. The trial court consolidated the two cases. The parties then jointly moved for judgment based on stipulated facts. The trial court declared that PNC's lien and note were unenforceable, and it rendered judgment that PNC take nothing on its claims against the Howards.

PNC appealed. Pertinent here, PNC argued that the Howards had used the proceeds from the PNC refinancing loan to discharge the existing mortgages, and as a result PNC has an equitable lien.

The court of appeals affirmed the trial court on this point, rejecting PNC's assertion of an equitable right to enforce the two earlier liens. __ S.W.3d __. The court of appeals weighed PNC's equitable right of subrogation against what it deemed to be PNC's negligent conduct: the Howards' petition in 2010 had put PNC on notice that the wrong entity had foreclosed on the property, giving PNC three years within the limitations period to take corrective action. *Id.* In balancing the

---

[3] PNC and Bank of Indiana informed the court of appeals that "Bank of Indiana, National City Bank, and PNC were all merged with and into each other." The court of appeals observed, however, that the trial court never made such a finding, and "PNC and Bank of Indiana have been listed and treated as separate parties, not merged entities, throughout the proceedings in this case." __ S.W.3d __. Because the bank defendants' positions are the same for purposes of this appeal, we refer to them jointly as "PNC" for the remainder of the opinion.

[4] PNC stipulated that the note was properly accelerated in June 2009. "A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.035(b).

enforceability of the existing lien against any equitable right to enforce a discharged lien, the court of appeals relied in part on the federal district court's decision in *Zepeda v. Federal Home Loan Mortgage Association*, No. 4:16-cv-3121, 2018 WL 781666 (S.D. Tex. Feb. 8, 2018), and our opinion in *Providence Institution for Savings v. Sims*, 441 S.W.2d 516 (Tex. 1969). __ S.W.3d__. The court of appeals held that, to the extent PNC held any equitable lien, it became unenforceable when PNC forfeited its own lien by failing to timely foreclose on it.[5] __ S.W.3d __.

Two months after the court of appeals' opinion, the lender in the *Zepeda* case appealed to the United States Court of Appeals for the Fifth Circuit, which in turn certified the question to us: "Is a lender entitled to equitable subrogation, where it failed to correct a curable constitutional defect in the loan documents under § 50 of the Texas Constitution?" *Zepeda v. Fed. Home Loan Mortg. Corp.*, 935 F.3d 296, 301 (5th Cir. 2019). We answered yes. *Fed. Home Loan Mortg. Corp. v. Zepeda*, 601 S.W.3d 763, 764 (Tex. 2020).

PNC petitioned this Court for review, solely contending that our opinion in *Zepeda* requires reversal. We agree.

The facts of *Zepeda* substantially mirror those in the case before us. In that case, Sylvia Zepeda purchased her homestead with a loan using the homestead as collateral, creating a mortgage lien. *Id.* Zepeda refinanced the debt four years later. *Id.* Zepeda used the proceeds from the refinancing to pay off the balance of the first loan. *Id.* Zepeda later notified the refinancing lender that its loan documents contained a constitutional defect, and she requested that

---

[5] The court of appeals affirmed the trial court's partial summary judgment declaring the foreclosure sale void and reversed the portion of the judgment declaring the note unenforceable, remanding the case for determination of the amount recoverable on PNC's claim to enforce the note. __ S.W.3d __. These aspects of the court of appeals' judgment are not before us.

the lender cure the defect. *Id.* The refinancing lender sold the loan without curing the defect. *Id.* After the new note holder similarly failed to cure the defect, Zepeda sued in federal court to quiet title. *Id.* at 764–65. Despite the infirmity of its own lien, the note holder claimed that equitable subrogation permitted it to assert the earlier lien because the proceeds from the note it held had been used to discharge that lien. *Id.* at 765. The federal district court concluded that the note holder was not entitled to equitable subrogation because it negligently had failed to cure the constitutional defect in its loan documents. *Id.*; *see Zepeda*, 2018 WL 781666, at \*8.

In answering the Fifth Circuit's certified question, we observed that equitable-subrogation rights become fixed at the time the proceeds from a later loan are used to discharge an earlier lien. *Zepeda*, 601 S.W.3d at 766. A lender's negligence in preserving its rights under its own lien thus does not deprive the lender of its rights in equity to assert an earlier lien that was discharged using proceeds from the later loan. *See id.* Although we considered the lender's negligence in *Sims*, that analysis is limited to the lien-priority context. *Id.* at 767 n.17.

Applying *Zepeda* to this case, the court of appeals erred in concluding that PNC's failure to timely foreclose under the deed of trust bars its subrogation rights.[6] The availability of better credit terms and interest rates can make refinancing an attractive financial tool for borrowers. Subrogation operates as a hedge against the risk of refinancing the outstanding amount of an existing loan, opening this credit market to borrowers. *Id.* at 768. Subrogation permits a lender to assert rights under a lien its loan has satisfied when the lender's own lien is infirm.

---

[6] As we said in *Zepeda*, equitable subrogation "arises by operation of law or by implication in equity." 601 S.W.3d at 765 n.3 (quoting *Subrogation*, BLACK'S LAW DICTIONARY (11th ed. 2019)). As in *Zepeda*, we do not address whether inequitable conduct associated with the discharged lien jeopardizes the lender's subrogation rights. *See id.*

The Howards note that their original loan was a purchase-money mortgage unlike the home-equity loan at issue in *Zepeda*. This distinction does not remove PNC's subrogation rights. Such rights, however, necessarily are limited by the conditions of the discharged lien.

Nor do we agree that a statutory default—PNC's failure to take timely action on its deed of trust lien[7]—bars subrogation when a constitutional defect does not. *See id*. (reaffirming that the Texas Constitution "does not destroy the well-established principle of equitable subrogation." (quoting *LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007))).

The Howards raise two other challenges. They claim that language in their deed of trust precludes PNC's exercise of subrogation rights. Alternatively, they assert that PNC's subrogation claims are also time-barred. These arguments were presented to the court of appeals but not addressed in its opinion. We remand these issues to the court of appeals for its consideration of them. TEX. R. APP. P. 53.4.[8]

\*     \*     \*

Without hearing oral argument, *see* TEX. R. APP. P. 59.1, we grant PNC's petition for review. We reverse that portion of the court of appeals' judgment declaring PNC's equitable-subrogation rights unenforceable based on a determination that PNC was dilatory in enforcing its own lien. We remand to the court of appeals for further proceedings consistent with this opinion and with *Federal Home Loan Mortgage Corp. v. Zepeda*, 601 S.W.3d 763 (Tex. 2020).

---

[7] TEX. CIV. PRAC. & REM. CODE § 16.035(b) (setting limitations period for foreclosures on a deed of trust lien).

[8] *See also State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 294 (Tex. 2013) ("[O]rdinarily a case will be remanded to the court of appeals for further proceedings when we reverse the judgment of the appeals court and the reversal necessitates consideration of issues raised in but not addressed by that court.").

OPINION DELIVERED:  January 29, 2021