# HAYES et ux. v. FIRST TRUST JOINT STOCK LAND BANK OF CHICAGO et al.

No. 13638.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 10, 1937.

Rehearing Denied Jan. 14, 1938.

Vaughan & Work, of Dallas, and John Abney, of Hillsboro, for appellants.

Lawther & Cramer, Wm. M. Cramer, and Lawrence F. Green, all of Dallas, for appellees.

SPEER, Justice.

This suit was instituted by the First Trust Joint Stock Land Bank of Chicago, to which we shall hereinafter refer to as "Land Bank," against G. D. Hayes and his wife, Eva Hayes, to whom we shall refer to as "defendants," the Missouri Kansas Texas Railway Company, to which we shall refer to as "Railway Company," the Texas Power & Light Company, which we shall call the "Light Company," and Zetta Gossett, Banking Commissioner of Texas, whom we will call "Commissioner," for a money judgment against G. D. Hayes on a note in the principal sum of $5,300 with certain interest and attorneys fees, and for a foreclosure of a deed of trust lien on about sixty-three acres of land in Hill county, Tex., against all the named defendants; allegations were made that the defendants, other than G. D. Hayes and wife, were claiming an interest in the land, but, if they had such, it was inferior to that of plaintiff.

The defendants light company and commissioner each filed disclaimers before trial and for that reason went out of the case, under the judgment rendered thereon.

Contained in the Land Bank's first amended petition and its first supplemental petition, upon which the trial was had, are allegations that prior to December 14, 1925, the date of the instruments sued on, defendants (Hayes and wife) had purchased a tract of land consisting of 54.89 acres, which we prefer to mention as the first tract, as have the litigants, and owed as purchase money thereon $3,600 to the first Trust Joint Stock Land Bank of Dallas, represented by a renewal note for the original vendor's lien notes, secured by a deed of trust on the land and subrogated to the purchase-money lien; that in addition thereto they owed certain other notes, representing the purchase money secured by a second lien. That Hayes represented in writing to plaintiff, on or about November 9, 1925, that he would acquire title to $8\frac{1}{3}$ acres of land on December 10, 1925, and that same would be acquired with funds furnished by plaintiff, if the loan should be made for which he was then applying; that Hayes did acquire the title to the second tract on December 14, 1925, and simultaneously therewith renewed and extended his former loan with the First Trust Joint Stock Land Bank of Dallas by executing his note to it for $5,300, and on the same date, joined by his wife, executed and delivered their deed of trust lien on both tracts of land to secure the payment of the new obligation. Allegation was made of the subsequent transfer and assignment to plaintiff of the note and lien, default in payment, and its accelerated maturity. Prayer was for judgment against Hayes for the debt, interest, and attorneys fees, and a foreclosure against all defendants as to the lien on both tracts of land.

The railway company answered by a general demurrer and a general denial, but made no further pleas, and apparently exercised little interest in the suit.

The defendants Hayes and wife answered by a general denial but subsequently, in their pleadings, confessed the validity of the indebtedness, and the husband's personal liability, and the validity of the lien on the first tract to secure

the Land Bank's claim; but especially denied that any lien existed as against the second tract of 8⅓ acres.

Defendants Hayes and wife filed a cross-action against the Land Bank, by which they sought to cancel the purported lien against the second tract, and, as grounds for cross-action, alleged the homestead exemption with reference to that tract; that they were husband and wife; that they had in the home a dependent son; that they had no other homestead than the land in controversy; and that prior to the time they procured a deed of conveyance to the second tract, they had entered into a written contract of purchase with the then owner on about June 23, 1925, by the terms of which they would get possession as soon as the occupant gathered the growing crops thereon; the price and all terms of the agreement were set out in the contract; that under the contract they obtained possession on about October 1, 1925. Allegations were made that they then owned and occupied the first tract and lived thereon as their homestead; that the second tract was contiguous to the one upon which they lived and was suitable to be added thereto for homestead purposes; that it was purchased with the intention of adding to the tract then owned and occupied, all to be used as the homestead of the family; that immediately upon getting possession under the contract they began using it along with the other land for homestead purposes; that they planted grain thereon for use by the family and pastured the milk cows used in the home, and the work stock on the land; that they owned no other lands than these two tracts; that the lands were not in any city, town, or village, but were rural lands; that both tracts aggregated much less than 200 acres; that the land had continuously been the homestead and was at all times occupied by them as such since acquiring it, up to the date of filing the pleadings.

By cross-action defendants (Hayes and wife) alleged that under the terms of the contract by which they purchased the second tract they were to pay a total of $1,666.66 of which $666.66 was to be paid in cash and they were to execute four vendor's lien notes to the seller; three notes for $300 each and one for $100. That on December 14, 1925, the contract of sale was carried out by them and the seller, and they then procured the deed thereunder.

On the same day they received the deed, they arranged with the First Trust Joint Stock Land Bank of Dallas for a loan of $5,300 with which to extend the maturity of the $3,600 first lien already held by it, and to take up and extend the $1,600 represented by second lien notes on the first tract, and to take up and extend the $100 note on the 8⅓ acres, or second tract; that this obligation for $5,300 was secured by a deed of trust on both tracts, and is the debt and lien sued on by the plaintiff Land Bank.

By cross-action defendants further alleged that all of the lands were continuously used by them for homestead purposes, and were being so used and occupied at the time of the execution of the note and lien, and the Land Bank had knowledge of all the facts; that only $100 of the amount represented by the note sued on was for the purchase money of the second tract; that the remaining purchase money therefor was paid by them and that no lien could attach thereto, in favor of the Land Bank for any part of said loan except the $100 included thereon. Allegation was made that a tender was made into court for $110 in payment of said note, and prayer was for a severance of the indebtedness sued on by the Land Bank along with the lien securing the same, so that a foreclosure could only be had as against the first tract, and requiring the Land Bank to accept the tender of $110 in payment of the note against the second tract; and that no foreclosure be had against that tract.

The case was tried to the court without a jury. The court filed findings of fact and conclusions of law. There is also a statement of facts in the file, which contains stipulations between the parties covering the documents, such as deeds, applications, contracts, note releases, etc., which are helpful in determining the rights of the respective parties. Upon the court's findings and conclusions, he rendered judgment in favor of the Land Bank for its debt and foreclosure of the lien against both tracts of land, as to all parties; and found against defendants on their cross-action. Defendants (cross plaintiffs) excepted, gave notice, and have perfected their appeal to the Dallas Court of Civil Appeals, and by order of the Supreme Court the case has been transferred to this court for review.

There is little controversy between the parties about the material facts, especially that the note for $5,300 and the deed of trust on both tracts were executed on and delivered about the time alleged and that the amount of the note covered the purchase money of the first tract and $100 on the second tract; that defendants in fact paid all the purchase money of the second tract except the $100 included in the note and lien; that the defendants owned the first tract (subject to the purchase money lien) and were occupying and using it as a homestead prior to the transaction at issue; that defendants entered into the written contract of purchase for the second tract in June, 1925, and got possession of it and began using it in connection with the first tract as their homestead and were so using it in December, 1925, when they received the deed to it and made the cash payment and executed notes for the deferred payments; that they thereafter paid all the purchase money for the second tract, except the $100 included in the loan note sued on; that defendants in 1930 tore down the old house on the first tract and used parts of the material in rebuilding the residence on the second tract, where they thereafter lived; that the two tracts were divided by the interurban railway right of way with a stock underpass between them. The court concluded, as a matter of law, that the second tract was not a part of the homestead, and that a valid lien could be executed thereon to secure the note sued on, and that the Land Bank was entitled to a foreclosure of its lien thereon.

Defendants have assigned error in several forms to the action of the court in his conclusions of law and the judgment rendered thereon, along with assignments complaining of findings of fact claimed to be without support in the record. We think there is merit in those complaining of the court's conclusions that the 8⅓-acre tract was not a homestead, and the judgment of foreclosure against it.

■ It is undisputed that defendants had entered into a written contract in June, 1925, for the purchase of the 8⅓-acre tract from one Marshall; all the conditions and terms were agreed upon. While this contract was signed by the seller, it does not appear that he was a married man, or, if so, that the land was any part of his homestead, thereby preventing him from contracting for its sale. It follows that

defendants thereby acquired an enforceable right to purchase under the terms of the contract. The equitable interest thus acquired was a valuable one; they later carried out the provisions of the contract of purchase, and that interest or estate so acquired dated from the time the contract was made; the defendants came into possession of the land the latter part of October and promptly sowed a part of it to grain and begun pasturing their milk cows and work stock on it, with the intention of making it a part of their rural homestead; the interest thus acquired by them prior to receiving the deed and making payment was such an estate as to which the homestead claim could attach.

As early as Smith v. Chenault, Adm'r, 48 Tex. 455, the Supreme Court held that the homestead right would attach to land used and occupied as such, although the claimant had only an equitable interest therein; that a contract of purchase, susceptible to enforcement by the purchaser, warranted the appropriation of that interest to homestead purposes.

It was held in Wheatley v. Griffin, 60 Tex. 209, that homestead rights will attach to an equitable estate, and estate for life, or even to a leasehold interest.

These principles have become well settled by our courts and have been constantly recognized when the question of homestead exemptions was involved.

■ The first tract owned and occupied by defendants as their homestead consisted of nearly 55 acres and the additional small tract being only divided from the home by the Interurban right of way, with a stock underpass between them, made it suitable for use in connection with the first tract for homestead purposes; the facts show that as quickly as they could get possession they put it to such use. It was not necessary that they actually live in a house situated on the small tract to make it a part of the homestead; the two tracts aggregated much less than 200 acres; a rural homestead may consist of 200 acres, even though they embrace more than one tract. Constitution, art. 16, § 51. The division of tracts by a road will not prevent the homestead rights from attaching. Youngblood v. Youngblood, 124 Tex. 184, 76 S.W.2d 759. It was held in Campbell v. Macmanus, 32 Tex. 442, that a homestead already acquired may be enlarged or increased to the maximum al-

lowed by law, and the addition becomes a part of the homestead and is exempt from execution. It is not essential to the homestead rights that there be a dwelling house on each of the several tracts, and used by the family as a place in which to live; such a contention would render it impossible for one owning less than 200 acres in his homestead to ever acquire additional acreage. As in the case at bar, the uses to which defendants put the additional land when they came into possession of it, was about the only manner it could have been used in connection with what they already had. The above course of reasoning and a conclusion that several tracts constituted the rural homestead is found in Hough v. Shippey, 16 Tex.Civ.App. 88, 40 S.W. 332, writ refused. Likewise, the same rule was announced in Taylor v. Ulmann, Stern & Krause, Tex.Civ.App., 188 S.W. 746 (writ refused). See, also, Brooks v. Chatham, 57 Tex. 31; Achilles v. Willis, 81 Tex. 169, 16 S.W. 746. Our Supreme Court has frequently said that our homestead exemption laws shall be liberally construed. Whiteman v. Burkey, 115 Tex. 400, 282 S. W. 788; Andrews v. Security Natl. Bank, 121 Tex. 409, 50 S.W.2d 253, 83 A.L.R. 44. Under this principle so well settled in the case of Cocke v. Conquest, 120 Tex. 43, 35 S.W.2d 673, it was held that the homestead, not in a town or city, may consist of several detached tracts not aggregating over 200 acres; and although the family residence or house was situated on one of those tracts the detached tracts when used for homestead purposes constituted a part of the homestead as did the tract upon which the house was situated.

■ If, as we have seen, the defendants acquired an equitable estate and title to the 8⅓-acre tract in June, 1925, under their contract of purchase, and under which they went into possession the latter part of October following, and begun the use and occupancy thereof to carry out their intentions of making it a part of the homestead, no subsequent lien could be placed thereon except for purchase money, and improvements in the manner prescribed by law. State Constitution, art. 16, § 50; Dixon v. Natl. Loan & Investment Ass'n, Tex.Civ.App., 40 S.W. 541, writ refused; Jones v. Moore, Tex.Civ.App., 289 S.W. 709, writ denied; Gibraltar Sav. & Building Ass'n v. Harper, Tex.Civ.App., 41 S. W.2d 130, writ refused; Hillyer v. West-

fall, Tex.Civ.App., 67 S.W. 1045, writ refused.

The note sued on and the lien sought to be foreclosed were dated December 14, 1925, and was subsequent to the time defendants acquired the estate in the second tract by the enforceable contract of purchase and went into possession and begun its use and occupancy in late October or early November; the defendants procured their deed of conveyance under the contract on the day of the execution of the note and deed of trust, but the homestead rights of defendants had already attached to the land and any attempt to give a lien against it for anything other than that provided by law was futile and ineffective. The undisputed testimony shows and the court so found as a fact that the $5,300 note was made up and contained the items of the purchase money unpaid on the first tract and $100 of the price paid for the second tract; the record clearly shows without contradiction that defendants paid all except the $100 of the purchase money on the small tract; therefore the attempted deed of trust lien on the small tract secured only the part of the purchase money included in the note; the record also discloses that the disbursement by the lender, at the request of the borrowers, covered payment of the notes against the first tract, leaving only $47.62 in the fund to apply on the $100 note against the second tract, yet the Land Bank purchased that note from the owner and was entitled to collect its full face value with such interest and attorney's fees as it provided for, regardless of the amount paid for it. The record before us does not show what amount, if any, had been paid by the defendants on the $100 note, that is, whether the interest accumulating since its execution had been paid, or whether the tender of $110 made by the defendants was sufficient to cover it.

We do not consider that the fact of defendants' removal of their dwelling house from one tract to the other in 1930 affected the homestead rights to both tracts as a whole. The second tract was as much a part of the homestead prior to the removal of the house as it was thereafter. It is true a part of the lumber salvaged from the old house was used in constructing the new one, but this is shown to have been with the consent of the Land Bank. Doubtless the belief of the Land Bank representatives that it had a lien on the second

tract prompted the consent, but if it was mistaken in this assumption, the defendants could not be penalized on that account.

■ The First Trust Joint Stock Land Bank of Dallas knew when it made the loan upon which this suit was based that defendants lived upon and claimed the first tract as their homestead; that the second tract was adjacent thereto and the two together contained less than 200 acres. It was chargeable with notice of the uses to which defendants had been putting the second tract since it came into their possession; they were advised by the examiners of the title that it was a homestead. The same occupancy and uses were being made of both tracts of land when the Land Bank acquired the note and lien. The validity of the lien depended upon the status of the land as respecting homestead rights, that existed at the time the pretended lien was created. French v. Coleman, Tex.Civ.App., 13 S.W.2d 469. Persons dealing with homestead rights must take notice of matters that will thus impress the lands with such rights. Watkins Land Mortgage Co. v. Temple, 56 Tex. Civ.App. 65, 119 S.W. 728. A purchaser of a note secured by lien on a homestead is charged with the duty to know that the lien is not on a homestead, if the indebtedness be for anything other than those things authorized by law. Sanger Bros. v. Brooks, 101 Tex. 115, 105 S.W. 37.

■ There is a finding by the court, supported by testimony, to the effect that on November 9, 1925, defendant G. D. Hayes made a sworn application to the First Trust Joint Stock Land Bank of Dallas for a loan of $6,000 in which it was recited that the loan was to take up the purchase money owing on the first tract and $1,200 of that against the second tract. But it remains that no such loan was really made; that only $5,300 was loaned on that application, and the items of purchase money against the respective tracts were covered as hereinabove shown. Furthermore, it is undisputed that in this $5,300 loan, only the $100 note of the purchase money of the second tract was included. The homestead rights of defendants having already attached, the lien could not be created for any other purpose than that provided by law. Moreover, in the absence of a showing that the money so borrowed was used in payment of the

purchase money for the second tract, no equitable lien would be created against it. Morrison v. Lazarus, 90 Tex. 30, 36 S.W. 426.

■ As above indicated, we think the trial court erred in entering judgment foreclosing the lien on the second tract for the indebtedness shown not to be the purchase money for that tract, and in denying defendants the relief sought in their cross-action; but as to the amount of the judgment and foreclosure of the lien as to the first tract, we find no fault. If the $110 admittedly tendered by defendants in payment of the balance due on the $100 note against the second tract was sufficient to pay it, it would be our duty to render such judgment as the trial court should have entered; but, as above stated, this does not appear from the record.

In the view we take of this appeal, the trial court should have entered judgment and foreclosure against the first tract for the amount shown to have been for the purchase money thereof; and a foreclosure against the second tract for such amount as was shown to represent the purchase money for that tract; and if the tender was sufficient to cover the latter, it should have been so found by the court and no foreclosure given as to that item. The case must be reversed and remanded rather than reversed and rendered for the reason the purchase-money obligations must be segregated and the amount of each ascertained; this we cannot do. Article 1856, Rev.Civ.Statutes, provides that when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, we must reverse and remand the cause. Williams v. Casualty Co., Tex.Sup., 102 S. W.2d 178.

For the error in the court's conclusions of law and the judgment entered thereon as hereinabove set out and for the lack of a finding of the amount of the indebtedness against the respective tracts secured by a valid lien thereon, as shown in this opinion, the errors assigned therefor are sustained, and the judgment of the trial court is reversed and the cause remanded for a determination of the facts pointed out, and the entry of a judgment thereon, agreeable with the principles hereinabove announced.

Reversed and remanded.