**Revised January 11, 2002**

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 00-50985

_____

NORWIN H. VOGEL; ELRINE E. VOGEL,


Plaintiffs - Appellants,

versus


ANN VENEMAN, Secretary of the US Department of Agriculture,


Defendant - Appellee.


_____

No. 01-50058

_____

NORWIN H. VOGEL; ELRINE E. VOGEL,


Plaintiffs - Counter Defendants - Appellants,

versus


ANN VENEMAN, Secretary of the U S Department of Agriculture,


Defendant - Counter Claimant - Appellee.

Appeals from the United States District Court
for the Western District of Texas

January 9, 2002

Before EMILIO M. GARZA, PARKER, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Norwin H. Vogel and Elrine E. Vogel (the "Vogels") appeal the district court's grant of summary judgment in favor of the United States of America, acting by and through Ann Veneman, on behalf of the Farm Service Agency (FSA), declaring the FSA's lien on the Vogels' property to be valid. The Vogels raise two issues on appeal: (1) the district court's calculation of the total lien amount violates the common law prohibition on lien spreading; and (2) the district court's application of payments made by the Vogels was in error, because the payments should have been first allocated to the portion of the loan secured by the homestead, rather than the unsecured portion. We reject both arguments.

**I**

This case concerns a parcel of land in Guadalupe County, Texas (the "property"). The Vogels have resided on this parcel continuously since 1972, operating it as a family-run farm and ranch. The Vogels purchased this land in two segments in 1972 and 1973. The first segment, purchased for $80,000 in 1972, consists of 139.021 acres. The Vogels obtained purchase money financing in the amount of $55,000 for this parcel from Westside Bank ("Westside"). In return for its note, Westside received a vendor's lien and a deed of trust lien on the property. In 1973, the Vogels purchased the second segment of the property, consisting of an adjoining 18.65 acres, for $11,000. Once again, the Vogels obtained purchase money financing from Westside, this time in the amount of $7,300. Westside received a vendor's lien and a deed of trust lien on the second segment as well.

In late 1973, the Vogels refinanced the Westside notes with The Federal Land Bank. The balances due on the two notes were $57,364.20 and $7,781.80, respectively, for a total of $65,146.

The total loan amount of $68,500 included $605 for the payment of taxes due on the property. In conjunction with the refinancing, Westside transferred and assigned the deeds of trust and vendor's liens to The Federal Land Bank.

In 1976 the Vogels obtained a $120,000 loan secured by the property from Travis Savings & Loan Association of San Antonio ("Travis"), a federally insured savings and loan association. In order to receive approval for the loan, Travis required the Vogels to furnish an affidavit which stated that the property was not their homestead. At closing, The Federal Land Bank note was paid, and the note was endorsed to Travis, carrying forward the lien to secure payment. The Travis deed of trust also included representations that the property was not a homestead. The Vogels used $67,005 of the proceeds of the Travis loan to pay off The Federal Land Bank note and $828.01 to pay property taxes due. The Vogels used the remaining $49,891 for operating expenses.

In January/February 1977, the Vogels formed a wholly-owned corporation, Vogel Farms, and conveyed the property to Vogel Farms by warranty deed. The Vogels formed this corporation at the request of Travis to circumvent the restrictions imposed by Texas law on mortgaging homestead property. Vogel Farms expressly assumed all existing debt on the property.

Also in 1977, Vogel Farms obtained a $75,000 loan from Mercantile Bank ("Mercantile") secured by the property. The Mercantile note and lien were secondary to the existing Travis liens. After the loan proceeds were received, the Vogels dissolved Vogel Farms and reconveyed the property back to themselves as individuals.

In 1978, Vogel Farms obtained an additional operating capital loan from the Small Business Association (SBA) in the amount of $50,000, secured by a deed of trust on the property, but subject to the Travis and Mercantile notes. As a condition to closing, SBA required the Vogels to revive

-3-

Vogel Farms and reconvey the property back to the corporation. The Vogels subsequently paid this loan in full.

In 1979, Vogel Farms refinanced the Travis and Mercantile debt with the Farmers Home Administration (now known as the Farm Service Agency, or FSA), in conjunction with a loan totaling $205,000. The loan was secured by a deed of trust lien on the property. From the loan proceeds, the FSA paid the balances due on both the Travis and Mercantile notes ($125,462 and $62,510 respectively). In addition, the proceeds were used to pay property taxes due in the amount of $1448.18, and to pay off other unrelated debt owed by the Vogels. The Vogels made payments on this loan until 1986, after which time they went into default. It is this final lien that the Vogels seek to invalidate. In 1993, Vogel Farms reconveyed the property back to the Vogels individually, after filing a "Designation of Homestead" in the property records of Guadalupe County. The Vogels contend that any lien on the property is an impermissible encumbrance on their homestead.

The Vogels sought a declaratory judgment in the district court declaring the FSA lien invalid. The district court granted FSA's second motion for summary judgment, finding that FSA was subrogated to the valid purchase money liens against the property, despite its homestead character, and that FSA had a valid lien against the property in the amount of $151,921.80 as of April 1, 2000, together with interest at $17.08 per diem thereafter. *Vogel v. Glickman*, 117 F. Supp. 2d 572, 580 (W.D. Tex. 2000). The Vogels now appeal this judgment.

**II**

We review the district court's grant of summary judgment as a matter of law de novo. *See Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether an issue of material fact is presented, we must view the facts and inferences in the light most favorable to the nonmoving party. *Olabisiomostosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

**A**

The Vogels first contend that the district court erred in calculating the total lien amount because the aggregation of the original purchase money liens on the two parcels violates the common law prohibition on lien spreading. The doctrine against lien spreading prohibits an existing lien on one part of homestead from extending to another part of the homestead. *See Baxter v. Crow*, 133 S.W.2d 187, 188 (Tex. Civ. App. - San Antonio 1939, writ dism'd judgm't cor.); *Hayes v. First Trust Joint Stock Land Bank of Chicago*, 111 S.W.2d 1172 (Tex. Civ. App. - Fort Worth 1937, writ dism'd w.o.j.). The Vogels argue that because the property was purchased in two pieces, the district court should have segregated the total lien amount of $151,912.80 between the two original segments of the property.

We find that the Vogels are precluded from raising this argument because they failed to make it before the district court. Except in cases of "extraordinary circumstances," we do not consider issues raised for the first time on appeal. *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996). A party must have raised an argument "to such a degree that the trial court may rule on it." *Fairchild Aircraft Corp. v. Whyte,* 6 F.3d 1119, 1128 (5th Cir. 1993).

The doctrine of lien spreading is not mentioned in the Vogels' briefs to the district court. The Vogels contend that their argument is subsumed by the homestead exemption, and that by raising the affirmative defense of homestead, they effectively raised the issue of lien spreading as well. To

support this argument, the Vogels rely on *Hayes v. First Trust Joint Stock Land Bank of Chicago*, where the court held that a lien could not be applied to a portion of a homestead when the purchase money lien on that portion had already been extinguished. *Hayes,* 111 S.W.2d at 1177. We are not persuaded by the Vogels' argument. The facts of *Hayes* are distinguishable from this case. In *Hayes*, the court never specifically addressed the issue of waiver or of lien spreading, and instead focused on the fact that a homestead cannot be encumbered once a valid lien is extinguished (an argument concerning the homestead exemption, as opposed to lien spreading). Here, none of the purchase money on either segment has been paid off, and no unencumbered homestead property is at risk.

The doctrine against lien spreading is sufficiently distinct from the general homestead exemption that it must be pleaded separately. In *Fairchild*, we held that a doctrine cannot be asserted "by implication." *Id.* at 1128 (rejecting appellant's attempt to raise the part performance doctrine on appeal through the citation of relevant cases). There, we rejected an argument on appeal "not even identified by name, much less advocated," before the trial court. *Id.* The two segments of the Vogels' property have been combined in the loan documents as one total parcel since 1973, when the Vogels obtained financing from The Federal Land Bank. Each successive deed of trust refers to the property's total aggregated acreage, and makes no attempt to differentiate between the two original segments.[1] The Vogels have had nearly 20 years to protest the aggregation of the purchase money liens, and to request that any new liens be separately allocated between the parcels. Alternatively, the Vogels attempt to rely on an exception to the waiver doctrine. They point to an

---

[1] It should also be noted that Texas courts have permitted liens to be spread across separate parcels in accordance with the terms of a deed of trust, even in the case of purchase money. *See Bielss v. Moeller*, 83 S.W.2d 1098 (Tex. Civ. App. - Austin 1935); *Lanham v. West*, 209 S.W.2d 258 (Tex. Civ. App. - Austin 1919). Here, the deeds of trust clearly aggregate the parcels.

exception recognized by the Ninth Circuit to argue that even if they failed to raise lien spreading in the district court, we should nevertheless entertain the issue on appeal. In *United States v. Patrin*, the court held that it would review claims not pressed before the trial court when the issue is "purely one of law and either does not affect or rely upon the factual record developed by the parties." 575 F.2d 708, 712 (9th Cir. 1978). The Vogels argue that the trial record is sufficient to support their lien-spreading claim without the presentation of new evidence. We reject this argument, as the Fifth Circuit does not recognize the broad exception of the Ninth Circuit. The clear rule of this circuit limits review of claims raised for the first time on appeal to claims involving purely legal questions where our failure to consider them would result in a "miscarriage of justice." *N. Alamo Water Supply*, 90 F.3d at 916. The Vogels have failed to meet this burden.

## B

The Vogels also claim that the district court incorrectly applied the loan payments they made between 1981 and 1986 by allocating them in accordance with the contractual provisions in the deed of trust.[2] They contend that the deed of trust is invalid, and that equity demands any payments made first be applied to the portion of the loan secured by their homestead, rather than the unsecured portion.

The Vogels claim that the conveyance of the property to Vogel Farms in 1977 was a "pretended sale," and that this pretended sale voided the deed of trust executed by Vogel Farms in favor of FSA. The doctrine of pretended sale provides that when a sale of a homestead occurs,

---

[2] FSA argues that the Vogels waived their claim on this issue by not addressing it in the district court. We disagree. The district court clearly addressed the issue of application of payments in its decision; therefore, it has not been waived on appeal. *See Vogel v. Glickman*, 117 F. Supp.2d. 572, 579 (W.D. Tex. 2000) ("Plaintiffs next argue defendant is not entitled to equitable subrogation because the Vogels have already paid their debt attributable to purchase money and taxes.").

whether by fraudulent representations or transfers, the sale will be treated as void and the homestead owner will not lose the protections afforded by the Texas Constitution. *Rubarts v. First Gibraltar Bank*, 896 F.2d 107, 115-16 (5th Cir. 1990) ("The people of Texas, through their constitution, have determined that in circumstances such as those presented here, debtors may enjoy the benefits of the homestead laws even where they employ devices designed to defeat the purposes of those laws."). The Vogels argue that because the deed itself is void, none of its provisions, including those governing the application of payments, are valid. TEX. CONST. art. XVI, § 50(c) ("All pretended sales of the homestead involving any condition of defeasance shall be void."); *see also Firstbank v. Pope*, 141 B.R. 115 (Bankr. E.D. Tex. 1992) (voiding lien on grounds of pretended sale where homestead owners transferred property to wholly-owned corporation in order to obtain loan); *McGahey v. Ford*, 563 S.W.2d 857 (Tex. Civ. App. - Fort Worth 1978, writ ref'd n.r.e.) (same); *Rubarts*, 896 F.2d 107 (finding pretended sale sufficient to invalidate lien, but saving lienholder's interest on grounds of subrogation).

We need not reach the question of pretended sale. Even if the FSA deed of trust is void under the doctrine of pretended sale, the original purchase money lien remains a valid encumbrance on the property, and any subsequent lender is subrogated to this valid lien.

Although the Texas Constitution fiercely protects the homestead rights of Texas citizens, it does permit encumbrances upon homesteads in certain instances. The constitution provides that a homestead is protected from forced sale *except* for debts consisting of purchase money, taxes, and construction costs. TEX. CONST. art. XVI § 50(a) (emphasis added). The Vogels do not dispute that they executed a valid purchase money lien on the property in 1973 with Westside.

The doctrine of subrogation provides that subsequent lenders will succeed to the rights of

prior lenders and become entitled to "all rights of the prior creditors in relation to the debt." *Means v. United Fid. Life Ins. Co.*, 550 S.W.2d 302, 308 (Tex. Civ. App. - El Paso 1977, writ ref'd n.r.e.). Texas courts have long held:

> [o]ne who pays a debt at the instance of the debtor, under such circumstances that it appears to have been contemplated by the parties that he should become entitled to the benefit of the security for the debt held by the creditor from the debtor, may, as against the debtor, be subrogated to the benefit of such security, and of the debt which he has discharged.

*Oury v. Saunders*, 77 Tex. 278, 280 (1890). Texas courts have routinely upheld this doctrine, even in cases where subsequent liens were executed with fraudulent misrepresentations by the homeowners. *See Rubarts*, 896 F.2d at 114-15 (upholding lien for the amount of debt owing on homestead because lender was subrogated to the rights of the initial purchase money lender, even when homestead owner had conveyed the property to a corporation to avoid the restrictions on encumbering a homestead).

Texas law provides for both contractual and equitable subrogation. Equitable subrogation is governed by principles of equity and occurs whenever a subsequent lender pays off an existing debt. Contractual subrogation arises when "a person advances money to take up and extend indebtedness secured by a vendor's lien on land under an *agreement* that such person shall stand in the place of the original holder of the indebtedness." *Glasscock v. Travelers Ins. Co.*, 113 S.W.2d 1005, 1009 (Tex. Civ. App. - Austin 1938, writ ref'd) (emphasis added). A valid deed of trust executed by both the borrower and lender establishes contractual subrogation. *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 662 (Tex. 1996) (holding a bank that advances money to pay taxes owing is contractually subrogated to the government's tax lien). The chain of financings from Westside to FSA, in which

each lender advanced money to extinguish prior amounts owing, and executed a deed of trust on the property, establish that FSA was both equitably and contractually subrogated to Westside's valid purchase money lien on the Vogels' homestead.

When a party is contractually subrogated to another lender, the terms of the original contract govern. Texas courts have repeatedly upheld the validity of payment application clauses in lending documents. *See Julian v. Fed. Deposit Ins. Corp.*, 163 B.R. 478 (Bankr. N.D. Tex. 1994) (finding that the parties are free to contract how the payments are to be applied, and upholding partial invalidity clause in deed of trust on homestead); *Hughes v. Team Bank*, 172 B.R. 205 (Bankr. N.D. Tex. 1993) (requiring payment application to unsecured portion of debt first when deed of trust contained partial invalidity clause); *Moore v. Bank of Commerce*, 110 B.R. 255 (Bankr. N.D. Tex. 1990) (outlining the application of payments according to an agreement). The Westside deed of trust contained a payment application clause that provided "in the event that any part of the indebtedness hereinabove described cannot be lawfully secured by this Deed of Trust lien on said real property, it is agreed that the first payments made on said indebtedness shall be applied to the discharge of that portion of said indebtedness." All subsequent deeds of trust contained similar clauses.[3] These partial

_____

[3]The other deeds of trust also included relevant payment application clauses:

(1) The Federal Land Bank deed of trust included this clause: "It is especially agreed by the undersigned, that in the event any portion of the indebtedness evidenced by the note referred to above is not or cannot be secured by a valid lien under the terms of this contract deed of trust covering the premises herein described, the mortagee is hereby directed to apply all payments received first to pay and discharge in full that portion, if any, of such indebtedness which may be unsecured."

(2) The Travis deed of trust included this clause: "In the event that any part of the indebtedness cannot be properly and legally secured by the liens in this Deed of Trust, then it is agreed by Grantors that the first payments on said indebtedness shall be allocated to the payment and discharge of that particular part thereof, notwithstanding any prior application of payment, agreement, or rule of law to the contrary."

invalidity clauses govern the application of the Vogels' payments, and therefore the payments made by the Vogels should first be applied to the unsecured portion of the debt.

We reject the Vogels' claim that equity requires that payment be applied first to the homestead portion of security. The Vogels incorrectly rely on *Paschall v. Pioneer Savings & Loan* to support this argument. 47 S.W. 98 (Tex. Civ. App. 1898). In *Paschall*, in contrast to this case, the parties did not contract for a specific allocation of payments. Here, we rely on the settled proposition that "[i]n light of the parties' contractual agreement, equitable principles do not control." *Hughes*, 172 B.R. at 213 n.13; *see also* Am Jur. 2d Payment § 122 (1987) (*absent a specific appropriation of payments by the parties*, the court will apply unappropriated payments to a debt secured by a mortgage on a homestead) (emphasis added)). We hold that the district court correctly determined the application of payments.

### III

We hold that FSA has a valid lien in the amount of $151,921.80 plus $17.08 per diem as of April 1, 2000, properly limited to the purchase money, property taxes, and accrued interest on the property. In accordance with the contractual provisions agreed to by the parties, any payments made by the Vogels should be applied first to the unsecured portion of the FSA loan. For the foregoing reasons, we AFFIRM the decision of the district court.