# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 30, 2014

Lyle W. Cayce
Clerk

No. 13-30934
Summary Calendar

JEMS FABRICATION, INCORPORATED, USA for use and benefit of,

Plaintiff - Appellee

v.

FIDELITY & DEPOSIT COMPANY OF MARYLAND; ZURICH AMERICAN
INSURANCE COMPANY,

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-393

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Fidelity and Deposit Company of Maryland ("Fidelity") and Zurich American Insurance Company ("Zurich," and collectively with Fidelity, the "Sureties") appeal the district court's entry of a final judgment in favor of JEMS Fabrication, Inc. ("JEMS") on its claim under the Miller Act, 40 U.S.C. §§ 3131–3134. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30934

## I.    Background

The United States Army Corps of Engineers (the "Corps") contracted with Benetech, LLC ("Benetech"), a construction contractor, to renovate and/or redevelop pumping stations at various sites located on the Mississippi River (the "JSP-05 Project"). Thereafter, the Sureties issued a payment bond (the "Payment Bond") pursuant to the Miller Act on behalf of Benetech to protect subcontractors on the JSP-05 Project against the risk of non-payment by Benetech. Benetech then entered into a subcontract (the "Contract") with JEMS in which JEMS agreed to provide certain custom-fabricated structural steel for the JSP-05 Project in exchange for a payment of $2,350,000. This figure included $202,432 for shop drawings, $1,316,584 for materials, and $830,984 for labor. Benetech and JEMS subsequently approved a change order for additional materials, increasing the total contract amount to $2,379,739.60. Later, JEMS and Benetech agreed to a modification of the Contract to permit Benetech to provide the on-site labor going forward in order to satisfy certain self-performance requirements of the Corps. Although this modification was not memorialized in writing, JEMS thereafter terminated its on-site labor force although it continued to incur certain labor-related expenses.

JEMS delivered all of the drawings required by the Contract. JEMS also delivered many of the materials required by the Contract. However, JEMS did not deliver one building required by the Contract (the "Hero Building"); instead, Benetech and JEMS agreed that Benetech would purchase the Hero Building directly from a subcontractor for $54,000. During its performance under the Contract, JEMS did not submit periodic invoices to Benetech. Rather, JEMS delivered shipping tickets to Benetech of materials provided and Benetech provided periodic payments to JEMS over the course of the Contract. However, the shipping tickets did not indicate the price of the materials delivered and Benetech's periodic payments did not detail which shipping

No. 13-30934

tickets were being paid.  In total, Benetech paid JEMS $996,882.14 for its work on the Contract.[1]  However, Benetech claimed that JEMS was not entitled to the remainder of the payment due under the Contract, because JEMS had failed to deliver all of the materials required by the Contract.

Thereafter, JEMS filed the instant federal action, alleging Miller Act claims against Benetech, Fidelity, and Zurich, as well as a breach of contract claim and a Louisiana state law claim against Benetech.  After a two-day trial, the district court entered a final judgment in favor of JEMS, ordering that Benetech, Fidelity, and Zurich were jointly and severally liable to JEMS in the amount of $497,873.46, plus interest.  The Sureties timely appealed.[2]

## II.     Standard of Review

We review a district court's conclusions of law *de novo.  See J.D. Fields & Co., Inc. v. Gottfried Corp.*, 272 F.3d 692, 696 (5th Cir. 2001).  However, we review a district court's findings of fact for clear error.  *See id.*; *see also* FED. R. CIV. P. 52(a)(6). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quotations omitted). Therefore, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

## III.     Discussion

The Miller Act requires that a general contractor on a federal project post a bond for the purpose of protecting the suppliers of materials for the project. *See Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 220 (5th Cir. 2012).  It

---

[1] Specifically, Benetech paid JEMS the following lump sums over the course of the Contract:  $50,000, $300,000, $396,882.14, $150,000, and $100,000.

[2] Benetech did not appeal the district court's entry of final judgment and is not a party to this appeal.

No. 13-30934

provides suppliers and subcontractors with the right to sue a prime contractor to recover on the bond for the amounts owed to them. *See* 40 U.S.C. § 3133(b)(1). This statutory scheme "was created to protect parties such as subcontractors or suppliers who work on federal projects as state-law liens cannot be applied against federally-owned property and traditional state-law remedies are unavailable." *Arena*, 669 F.3d at 220. The Miller Act is "highly remedial in nature" and "is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944).

The elements of a Miller Act claim are: (1) the plaintiff supplied materials in prosecution of the work provided for in the contract; (2) the plaintiff has not been paid; (3) the plaintiff had a good faith belief that the materials were intended for the specified work; and (4) the plaintiff meets the jurisdictional requisites of timely notice and filing. *See U.S. for Use & Benefit of Carlson v. Cont'l Cas. Co.*, 414 F.2d 431, 433 (5th Cir. 1969); *U.S. for Use & Benefit of Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984).

First, the Sureties argue that the district court erred in entering judgment in favor of JEMS because JEMS failed to demonstrate at trial either: (1) that it supplied materials to Benetech in prosecution of the JSP-05 Project; or (2) that it had a good faith belief that the materials supplied to Benetech were intended for the JSP-05 Project. *See Carlson*, 414 F.2d at 433; *see also United States v. C. J. Elec. Contractors, Inc.*, 535 F.2d 1326, 1328–29 (1st Cir. 1976). Specifically, the Sureties assert that JEMS supplied materials to Benetech for other unrelated projects that were not covered by the Payment Bond at the same time as it supplied materials to Benetech for the JSP-05 Project. The Sureties argue that JEMS failed to demonstrate that the

4

materials it supplied were intended for the JSP-05 Project, not other projects, or that it had a good faith belief that the supplied materials were intended for the JSP-05 Project, not other projects.

However, the Sureties never argued to the district court that JEMS' claim included materials supplied to Benetech for other projects. Absent extraordinary circumstances not present here, we do not consider arguments not previously raised before the district court. *See Vogel v. Veneman*, 276 F.3d 729, 733 (5th Cir. 2002).

Second, the Sureties assert that the district court erred in entering final judgment in favor of JEMS because the shop drawings prepared by JEMS for Benetech are not compensable labor under the Miller Act. The district court court concluded that "Benetech already paid for the [shop] drawings . . . because Benetech's payments of $996,882.14 covered the amount JEMS was owed for the [shop] drawings." The Sureties contend that the district court erred in concluding that Benetech's payment of $996,882.14 covered the cost of the shop drawings. Specifically, the Sureties assert that, under Louisiana's law of imputation, the district court should have imputed Benetech's payment of $996,882.14 to the cost of the materials, not the cost of the shop drawings. *See* La. Civ. Code Ann. art. 1868 (providing that payments must be imputed to secured debts in preference to unsecured debts where the debts are simultaneously incurred).[3] The Sureties failed to raise this argument before the district court. In fact, the district court noted that "the Sureties provide no justification as to why the amount due for the drawings should be deducted

---

[3] The Sureties maintain that the cost of the materials is a secured debt and the cost of the shop drawings is an unsecured debt because materials, but not shop drawings, are compensable under the Miller Act. We need not resolve the question of whether shop drawings are compensable labor under the Miller Act because Louisiana's law of imputation does not apply here.

No. 13-30934

from the top of the remainder of the Contract Price owed to JEMS, rather than attributed to the amounts already paid by Benetech." We thus decline to consider this argument. *See Vogel*, 276 F.3d at 733.[4]

Third, the Sureties argue that the district court erred in entering final judgment in favor of JEMS because the Sureties were entitled to a setoff in the amount of $408,759.13. Specifically, the Sureties assert that JEMS failed to deliver all of the materials required by the Contract and that, as a result, Benetech was forced to procure additional materials for the JSP-05 Project from other suppliers at a cost of $408,759.13. The district court concluded both that "JEMS delivered the material required by the Contract" and that Benetech was not entitled to deduct any expenditures in excess of the $54,000 attributable to the Hero Building because "Benetech failed to provide JEMS with notice of any deficiency and an opportunity to cure [pursuant to the Contract] before incurring the[se] additional expenses."

---

[4] Even if we did consider it, Louisiana's law of imputation only applies where "[a]n obligor . . . owes several debts to an obligee." La. Civ. Code Ann. art. 1864; *see also Delesdernier v. Delesdernier*, 95 So. 3d 588, 595 (La. App. 5 Cir. 2012) ("Because spousal support is a single obligation, the law of imputation does not apply."). Here, Benetech incurred a single lump-sum debt to JEMS pursuant to the Contract and therefore Louisiana's law of imputation does not apply. After reviewing the evidence presented at trial, the district court found that JEMS completed all of the shop drawings required by the Contract and further found that Benetech's payment of $996,882.14 covered the cost of the shop drawings. Even if we considered this argument, and even if we concluded that the debts were separable and applied Louisiana's law of imputation, we would nevertheless conclude that the district court did not err in imputing Benetech's payment of $996,882.14 to the cost of the shop drawings. JEMS introduced evidence at trial indicating that it prepared the shop drawings first and the materials second, and the Sureties do not challenge this factual finding on appeal. Under such circumstances, Louisiana's law of imputation requires that the district court impute payment to the earlier incurred debt. *See* La. Civ. Code Ann. art. 1868 ("When the parties have made no imputation, payment must be imputed to the debt that is already due."); *see also Hattiesburg Mfg. Co. v. Pepe*, 140 So. 2d 449, 456 (La. App. 1 Cir. 1962) ("[P]ayments on a single account must be imputed to the oldest items thereon."). The Sureties have failed to establish any grounds upon which we could conclude that these factual findings were clearly erroneous. *See* FED. R. CIV. P. 52(a); *Anderson*, 470 U.S. at 573–74.

No. 13-30934

The Sureties maintain that, unlike Benetech, it is not bound by the "notice and cure" provisions of the Contract and that it should not be precluded from obtaining a setoff on that basis. However, while a Miller Act surety is not a party to a contract between a subcontractor and a contractor, *see U.S. for & on behalf of Portland Constr. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976), it nonetheless stands in the shoes of the contractor and is bound by its dealings for these purposes, *see U.S. for Benefit & on Behalf of Sherman v. Carter*, 353 U.S. 210, 217–18 (1957); *see also Hous. Fire & Cas. Ins. Co. v. E. E. Cloer Gen. Contractor*, 217 F.2d 906, 910 (5th Cir. 1954). Therefore, the Sureties, like Benetech, are bound by the terms of the Contract, including its "notice and cure" provisions. The Sureties do not dispute that Benetech failed to comply with these provisions. As a result, we conclude that the district court did not err in concluding that neither Benetech nor the Sureties were entitled to a setoff for these additional expenses.[5]

Moreover, JEMS introduced substantial evidence at trial indicating that it had supplied all of the materials, with the exception of the Hero Building, required by the Contract, including testimony from several witnesses, shipping tickets, and bills of lading. Although Benetech introduced evidence indicating

---

[5] The Sureties also argue that they should have been credited $147,000 for the purchase of the Hero Building, not $54,000. At trial, JEMS introduced evidence that it had contracted with a subcontractor to purchase the Hero Building for $54,000. Benetech and JEMS subsequently agreed that Benetech would purchase the Hero Building directly from the subcontractor. Benetech claimed that thereafter it spent $147,000 to purchase the Hero Building due to changes in the building specifications for the Hero Building made by the Corps requiring the purchase of additional materials. The district court concluded that Benetech failed to comply with the "notice and cure" provisions of the Contract before incurring these additional expenses and could not therefore claim them as a setoff at trial. The Sureties do not dispute that Benetech failed to comply with these provisions. The district court also concluded that, to the extent these additional expenses were incurred due to subsequent changes in the building specifications imposed by the Corps, "the expenses do not fall within the scope of JEMS' work." The Sureties do not challenge this conclusion. We therefore conclude that the district court did not err in crediting Benetech and the Sureties $54,000, and not $147,000, for the cost of the Hero Building.

that it purchased materials for the JSP-05 Project, it did not introduce evidence directly linking the invoices for its purchases with specific materials that should have been delivered by JEMS under the Contract. As a result, we conclude that the district court did not clearly err in concluding that "JEMS delivered the material required by the Contract." *See* FED. R. CIV. P. 52(a)(6); *Anderson,* 470 U.S. at 573–74.

AFFIRMED.